MICHAEL A. SWEET (SBN 184345)
msweet@foxrothschild.com
JACK PRAETZELLIS (SBN 267765)
jpraetzellis@foxrothschild.com
NOAH THOMAS (SBN 358134)
nthomas@foxrothschild.com
**FOX ROTHSCHILD LLP**
345 California Street, Suite 2200
San Francisco, California 94104
Telephone:  (415) 364-5540
Facsimile:  (415) 391-4436

*Attorneys for Anvil Builders*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Case No. 25-10088 (WJL) |
| KINGSBOROUGH ATLAS TREE SURGERY, INC. | Chapter 11 |
| Debtor. | **OBJECTION OF ANVIL BUILDERS TO MOTION FOR SALE OF PROPERTY (CUSTOMER LIST) [DOC# 95]** |

## I. INTRODUCTION

This Motion seeks to sell a customer list ("Customer List") belonging to Creditor Anvil Builders ("Anvil"). It was taken from Anvil when the Santa Rosa division of Anvil was closed. Anvil believes that a Debtor principle went to work for the Buyer, along with his daughter, along with the individual that actually took the Customer List. Since the Customer List has been taken (and presumably used), its value to Anvil has likely been destroyed. Anvil is in the process of bringing claims in state court against those that took it. Anvil raises this objection not to have the Bankruptcy Court adjudicate the ownership of the Customer List in this summary contested matter as a basis for denying the Motion, but rather to make clear that the Customer List belongs to Anvil notwithstanding the Debtor's attempted sale.

1

Excluding the ownership issue, a host independent reasons exist to deny or qualify the Motion. *First*, the sale appears to be to the current employer of a principal of the Debtor and his child (a fact not disclosed anywhere in the Motion) without any evidence whatsoever that the sale price is fair and reasonable, that it was subject to adequate marketing, and that it was the product of an arms-length negotiation. In other words, there's insufficient evidence to support a Bankruptcy Code § 363(b) sale at this price. *Second*, the Customer List (if owned by the Debtor) is subject to Anvil's security interest perfected by a recorded UCC-1 and the sale does not sell free and clear of Anvil's lien nor does the sale purport to have Anvil's lien attach to the proceeds. This Motion should not be granted.

## II. FACTUAL BACKGROUND

Anvil entered into a line of credit and security agreement (the "LOC") with the Debtor and in connection therewith advanced significant sums to the Debtor. As part of that LOC, a UCC-1 was recorded. A copy of the UCC-1 is attached to the Declaration of Sean Filippini ("Filippini Decl.") as Exhibit 1. As of shortly before the petition date, the Debtor owed approximately $4.6 million on the LOC.

The Debtor proposes to sell "the Debtor's" Customer List to Davey Tree Expert Company ("Buyer"). Mot. at 1. The Customer List, in fact, belongs to Anvil and isn't property of the estate. Pre-petition Anvil discovered that the Debtor and/or its confederates misappropriated the Customer List and demanded its return. Anvil's demand letters relating to, among other things, the Customer List are attached to the Filippini Decl. as collective Exhibit 2. In response, counsel for a Debtor confederate admitted to taking the customer list writing "she has deleted the information". A copy of this concession is attached to the Filippini Decl. as Exhibit 3.

Per the Motion, the sale proceeds are to be paid directly to Commercial Credit Group ("CCG"). The Debtor asserts that CCG has a duly perfected security interest in the Customer List that secures a loan to Debtor with a current balance of more than $2,000,000. Mot. at 2. The Debtor does not supply a copy of the security agreement, loan, or UCC-1 as part of the Motion. Nor does it do anything to substantiate CCG's purported security interest.

The Motion does not value the Customer List, nor does the Motion describe any marketing performed by the Debtor whatsoever with respect to the Customer List. The basis for determining the sale is in the best interest of the estate is simply that "[t]he sale of the Customer List Debtor no longer utilizes will pay down Debtor's obligation to Commercial Credit Group that will, combined with future sales of CCG's collateral, create equity that should benefit the unsecured creditors [and] I believe the sale is a sound exercise of my business judgment and should be approved." Doc# 95-1.

Most egregiously – and coupled with the absence of any marketing or valuation whatsoever – the Motion does not address the fact that the Debtor has a host of connections to the Buyer. *First*, Anvil is informed and believes that Richard Kingsborough and the former employee named in Exhibit 3 work for Buyer. *Second*, and beyond Anvil's information and belief, there really is no question that a child of the Debtor's principals (and a former Anvil employee and before that a Debtor employee) currently works for the Buyer. A screenshot from her publicly viewable LinkedIn profile follows below.[1]

**Kelli Kingsborough**
ISA Certified Arborist
San Francisco Bay Area · Contact Info

DAVEY The Davey Tree Expert Compan[y]
Santa Rosa Junior College

## III. GOVERNING LAW

Bankruptcy Code § 363(b) authorizes the non-ordinary course sale of property of the estate following notice and a hearing. "In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold." *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991). "In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e. it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an

---

[1] Available at https://www.linkedin.com/in/kelli-kingsborough-5a1a22116 (last visited April 29, 2025).

1712775603
Case: 25-10088    Doc# 114    Filed: 05/01/25    Entered: 05/01/25 16:40:42    Page 3 of 8

'arms-length' transaction." *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991).

Standing alone, a Bankruptcy Code § 363(b) sale does nothing whatsoever to liens against the property of the estate. Only a sale approved under Bankruptcy Code § 363(f) is free and clear of liens. *In re Payne*, 512 B.R. 421, 427 (Bankr. E.D.N.Y. 2014) ("Property of the estate may be sold subject to liens, claims and encumbrances under § 363(b), or may be sold free and clear of liens, claims, and encumbrances under § 363(f)."). The Debtor's Motion, however, is decidedly not a Bankruptcy Code § 363(f) motion. It offers no evidence or argument with respect to any of Bankruptcy Code § 363(f)(1)-(5) and it fails to comply with B.L.R. 6004-1 (requiring specific notice provisions, evidence relating to Bankruptcy Code § 363(f), and identification of the basis for the sale under 363(f). Thus, were the sale approved (and it should not be), the property sold would be subject to all of the Debtor's liens, claims, and encumbrances.

It is no surprise that applicable state law does not cause liens to be avoided through the non-consensual disposition of collateral. "A security interest . . . continues in collateral notwithstanding [the] sale . . . thereof unless the secured party authorized the disposition free of the security interest . . . ." Cal. Com. Code § 9315; *see, e.g.*, *United States v. Handy & Harman*, 750 F.2d 777, 780 (9th Cir. 1984) ("As a general rule, when collateral subject to a security interest is sold, the security interest continues in both the collateral and in the proceeds generated by the sale. [Citation.]"). Thus any secured claims against the collateral will remain secured against that collateral. *See id*.

Finally, under applicable law, in the context of the non-consensual disposition of collateral subject to liens, the security interest attaches to identifiable proceeds of the collateral, i.e., the cash. Cal. Com. Code § 9315.

**IV.    DISCUSSION**

    **A.  Reservation Relating to Ownership of the Customer List**

Anvil owns the Customer List and the Debtor and its confederates misappropriated it. *See* Filippini Decl. at Ex. 2 (demand letter); *id.* at Ex. 3 (admission). Anvil will liquidate its claim against the parties that took it (aside from the Debtor who is presently protected by the automatic stay) in state court. Anvil is not opposing this Motion on the basis of ownership because the

4

Customer List's value to Anvil has likely already been destroyed via disclosure to Buyer. *See id.* at Ex. 3 (admission). Rather than decide ownership in this summary contested matter focused on maximizing recovery to creditors, Anvil intends to liquidate its damages claim (against non-debtors) in state court. Anvil reserves all rights with respect to the Customer List.

### B. Objection To Sale Under The Assumption That The Debtor Owns The Customer List

#### a. Anvil's Lien Survives The Sale (Assuming The Customer List Were Debtor Property)

The Debtor proposes selling the Customer List to the Buyer under Bankruptcy Code § 363(b). The Debtor neglects to address that the Customer List – were it property of the estate – would be subject to Anvil's UCC-1 (along with the purported blanket lien of CCG in so far as there is no evidence that CCG authorized the sale free and clear of its UCC-1). The Buyer will take the Customer List subject to Anvil's lien as well as, perhaps, the lien of CCG, and others.

Anvil reserves the right to exercise any state law rights with respect to the Customer List. In other words, Anvil does not authorize the disposition of collateral free of the security interest. Cal. Com. Code § 9315.

#### b. Proceeds From The Sale Of Debtor Property Are Collateral Of Secured Creditors, Not Debtor Property

To the extent any proceeds are generated from the sale of the Customer List (under the assumption that the Customer List is property of the estate), those proceeds are Anvil's cash collateral. Cal. Com. Code § 9315. Anvil requests that any order authorizing the sale of the Customer List explicitly provide that Anvil's lien on the Customer List shall attach to any and all proceeds from the sale without any further action by Anvil. The Debtor has not provided any evidence that CCG's lien is senior to Anvil's lien providing a basis to turn over the sale proceeds to CCG or otherwise. If a sale is approved, the proceeds should be held pending proof on that point.

///

///

///

### c. Undisclosed Sale Terms

The Motion is scant on details of the proposed sale. These details matter. *See In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991). First, the Debtor should be required to explain what connections the Debtor has with the Buyer along with the value of the property being sold and the efforts made to maximize the sale price (i.e., prove good faith). Nothing in the Motion explains how this sale reflects a good deal for the Debtor (i.e., proves the transaction is fair and reasonable). Indeed, the Motion doesn't even try to say what the Customer List is worth. Moreover, the Debtor completely omits that its insiders are employed by the Buyer. That conflict – indicating the absence of an arms-length transaction, along with the absence of evidence of value – makes it hard to see this transaction meeting the bar set by Bankruptcy Code § 363(b).

Beyond a good faith and a fair and reasonable sale, the transaction specific details matter… is there a written agreement describing the obligations of the parties? What representations did the Debtor make to the Buyer about the Customer List? What disclosures did the Debtor make to the Buyer about ownership of the Customer List or about liens against it? Where the Buyer is buying the trade secret of another party that otherwise would be subject to liens, one wonders about the liability that will be created for the Estate when the other shoe drops, and Anvil (or some other secured party), exercises its valid state law rights with respect to the Customer List that the Buyer just purchased? And what about the liability to the Estate if a claim is brought against the Buyer for misappropriation of trade secrets? In light of those series of unanswered questions, it does not even appear that the Debtor can articulate a good business reason for the sale since as presented, it will almost certainly result in spinoff litigation against the Estate.

### V. **CONCLUSION**

Anvil reserves all rights as to ownership of the Customer List as it intends to liquidate its tort claims for damages over the Customer List in state court. With respect to the remainder of the Motion (and assuming only for the sake of argument that the Customer List belongs to the Debtor) Anvil respectfully requests that the Motion be denied and in the event the Motion is granted that (a) any sale order explicitly provide that it does not adjudicate ownership of the Customer List, (b) any

purchase is subject to Anvil's lien, and (c) that Anvil's lien shall attach to the proceeds from the sale without any further action by Anvil for disposition of those proceeds upon further order.

Date: May 1, 2025                                           FOX ROTHSCHILD LLP

*/s/ Jack Praetzellis*
Jack Praetzellis
*Attorneys for Anvil Builders*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents entitled: OBJECTION OF ANVIL BUILDERS TO MOTION FOR SALE OF PROPERTY (CUSTOMER LIST) [DOC# 95] will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 5/01/25, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jay K Chien    jay.chien@usdoj.gov, Ianthe.V.Rosario@usdoj.gov;katina.umpierre@usdoj.gov
- Michael C. Fallon    mcfallon@fallonlaw.net, manders@fallonlaw.net
- Alan W Forsley    alan.forsley@flpllp.com
- Gabriel P Herrera    gherrera@kmtg.com, bxiong@kmtg.com
- Office of the U.S. Trustee / SR    USTPRegion17.SF.ECF@usdoj.gov
- Jack Praetzellis    jpraetzellis@foxrothschild.com, jack-praetzellis-1683@ecf.pacerpro.com
- Michael A. Sweet    msweet@foxrothschild.com, michael-sweet-6337@ecf.pacerpro.com

**2. SERVED BY UNITED STATES MAIL**: On N/A, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on N/A, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/01/2025 | Kimberly Hoang | /s/ Kimberly Hoang |
|---|---|---|
| Date | Printed Name | Signature |

Active\118534396.v2-1/12/21