MICHAEL A. SWEET (SBN 184345)
msweet@foxrothschild.com
JACK PRAETZELLIS (SBN 267765)
jpraetzellis@foxrothschild.com
NOAH THOMAS (SBN 358134)
nthomas@foxrothschild.com
**FOX ROTHSCHILD LLP**
345 California Street, Suite 2200
San Francisco, California 94104
Telephone:    (415) 364-5540
Facsimile:    (415) 391-4436

*Attorneys for Creditor Anvil Builders*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>Kingsborough Atlas Tree Surgery, Inc.,<br><br>Debtor | Case No. 25-10088<br><br>Chapter 11<br><br>**SUPPLEMENTAL OBJECTION OF ANVIL BUILDERS TO SALE MOTIONS [DOCKET NOS. 95, 97, 110 AND 112]** |

Creditor Anvil Builders ("Anvil") hereby submits this Supplemental Objection to the Debtor's Sale Motions at Docket Nos. 95, 97, 110, and 112 (the "Sale Motions") that seek authority to sell a customer list and various items of equipment.

**I.      BACKGROUND**

During a status conference on May 14, 2025, the Bankruptcy Court allowed the Debtor to submit supplemental evidence in support of the Sale Motions, which it did. Docket Nos. 132-134. Anvil thought the supplemental evidence was supposed to respond to its objections. *See* Docket Nos. 114-116, 119-120. It doesn't. The Debtor's supplemental evidence, if anything, indicates these sales should not be approved. The evidence fails to address serious concerns about self-dealing and shows the Debtor did nothing in advance to make sure these sales made sense. Rather than addressing the underlying issues with the Sale Motions, the Debtor's supplemental evidence

- 1 -

raises new issues with its proposed sales.

## II. GOVERNING LAW

Bankruptcy Code § 363(b) authorizes the non-ordinary course sale of property of the estate following notice and a hearing. "In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold." *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991). "In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e. it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an "arms-length" transaction." *Id*.

## III. ARGUMENT

### A. Customer List: Ownership

Debtor insider Mr. Richard Kingsborough writes in his supplemental declaration that "In June of 2023, the Debtor entered an Asset Purchase Agreement with Anvil Builders wherein the Debtor agreed to sell its entire business, commercial and residential tree service, to Anvil Builders." Docket No. 132 at 1:19-21. In other words, the Debtor sold its entire business to Anvil, including its residential business. So, Mr. Kingsborough has admitted that the Debtor sold the customer list at issue to Anvil. And yet, in the same breath, he attempts to have the Debtor sell it again.

Anvil continues to believe that ownership of the customer list should be addressed in state court. However, now that the Debtor has put in evidence that it does not own the customer list, Anvil does not see how the Bankruptcy Court can approve its sale.

### B. Customer List / Equipment: Insider Transaction

The supplemental declarations also fail to address the insider nature of some of these transactions. Davey Tree Expert Company ("Davey"), the proposed buyer for certain equipment and the customer list, currently employs Mr. Kingsborough (and his child). *See* Docket No. 132. Yet, the first time the Debtor mentioned that fact was 7 days ago. The Debtor proposes to sell its assets to the employer of its insiders and the first time the Debtor mentioned this connection is over a month after the sale motion was filed. The Debtor's supplemental evidence makes no effort to

explain *why* the Debtor waited to disclose this fact and offers no self-dealing guardrails.

The Debtor's supplemental declarations provide no details about the terms of the sales transaction with any of the buyers (Davey or otherwise). Was there diligence? Representations? Indemnities? A contract? Are the insiders receiving a commission? The failure to provide details cuts against this transaction in two ways. *First*, we cannot evaluate if the Estate has protected itself from claims relating to the sales. And, because the sales proposed are Bankruptcy Code § 363(b) sales and not free and clear sales **and** lienholder creditors, any assets sold will be sold subject to whatever liens exist (see *infra* Section D). What happens once a valid lienholder begins an Article 9 foreclosure against its collateral that was "sold" to a buyer . . . will the buyer have a claim against the Debtor, a right to its money back, something else? *Second*, we still have no idea if this transaction is moving forward because it is a reasonable deal for the Debtor or if it is simply designed to enrich the Debtor's insiders. And, if approved as is, we will never know.

C. **Customer List: Sale Price**

The Debtor attempts to retrospectively support its pricing for the customer list. Not by providing an industry expert. Not by showing significant (or even any) pre-sale efforts to market the customer list. Instead, by cold mailing a "notice of the opportunity to purchase" the customer list to "the largest tree service companies in Northern California" a month after filing the motion.[1] Docket No. 132 at 2:7-9. From the record it does not even look like the Debtor identified the potential purchasers that were to be given this notice (and instead the Debtor relied on its bankruptcy lawyer to identify the purported potential buyers).

And what exactly was disclosed in this notice? Nearly nothing. It doesn't say how many customers are on the list. How many of them are repeat buyers. How the list was generated. How the leads were developed. Instead, the notice says it's a "customer list, consisting primarily of residential customers that has been developed by the Debtor since the company started operating in 1982." Docket No. 133 at 2:17-19. That, and it costs $200,000.

It's hard to imagine a less effective marketing strategy for this list than the Debtor employed

---

[1] Moreover, if a potential buyer went and viewed the sale motion Docket No. 95, it would have seen that the motion is **not** framed as subject to overbid or an auction.

here. Coupled with the concerns raised above with respect to the inside nature of this transaction, one is left to wonder why the Debtor disclosed so little and put so little effort into marketing this purported asset.

### D. Equipment: Anvil's Lien

The Debtor did not address Anvil's lien on all the equipment that the Debtor seeks to sell. As set forth in Anvil's prior Objections, Anvil holds a valid UCC-1 recorded security interest against all assets of the Debtor, securing a debt in the amount of not less than $4.6 million. The Debtor, in its moving papers, states that the senior lien creditor, Commercial Credit Group ("CCG") consents to the sale of this equipment. Notwithstanding that consent, the Debtor cannot sell free and clear of Anvil's lien without addressing any of the criteria for selling free and clear as set forth in § 363(f) of the Bankruptcy Code.

The Debtor has made no showing and has not even attempted to address any of the issues with respect to Anvil's lien. The Debtor merely states that it will turn over proceeds to CCG. That does not address Anvil's lien nor the effect on the buyer of the equipment that will still be subject to Anvil's lien. This is a problem for the Debtor when we consider what happens after the sale, when the automatic stay does not apply to the equipment, Anvil can exercise its state law remedies, and the buyer turns around and brings a claim against the Estate.

### E. Equipment: Sale Price

The Debtor submitted the Declaration of Todd Eisenhauer to support the pricing of unspecified equipment to be sold. Mr. Eisenhauer is the spouse of a former employee of the Debtor who is now employed by Davey (who managed to misspell his own last name in his declaration). Docket No. 134. The Debtor's evidence of value comes from a place of obvious bias. Beyond that, there is no evidence that Mr. Eisenhauer was involved in setting or negotiating the actual prices that the Debtor proposes to sell the equipment for. And, Mr. Eisenhauer's Declaration ***does not*** even specify what equipment he is talking about.

> I have been involved with the purchase and sale of heavy equipment for the past 35 years through TDE Equipment, Inc., a California Corporation formed by me on January 30, 2014. I have also been buying and selling equipment used in the tree care business for the Debtor for more than 20 years. I am married to Jamie Eisenhaur [*sic*] who was a long term employee of the Debtor and who now works for Davey

Tree Expert Company.

> The starting point for determining the sale price for the equipment to be sold by the Debtor was an appraisal of all of the equipment that was started in late 2022 that was finished in June of 2023. I considered the wear and tear of the equipment over the last two years and how the depreciation of the equipment affected the value. I also looked at what similar equipment was available on the market by going to web sites such as Machinery Trader and Truck Trader, and looked at the results of auction sales at Ritchie Bros. I spoke with the dealers who sold the equipment to the Debtor and people I have known in the industry during the thirty-five years I have been in the business.
>
> In my opinion, the price at which the Debtor is selling the equipment is the market value of the equipment that is more than what might be obtained at an auction sale.

Docket No. 134. Assuming Mr. Eisenhauer's Declaration were given credence, which it should not be, it is impossible to know whether or not the price is right, or even in the range, without knowing what equipment Mr. Eisenhauer is purportedly talking about.

Getting into the details, Mr. Eisenhauer's Declaration does not say that the price is within the ballpark. Instead he offers a vague and confusing opinion: "In my opinion, the price at which the Debtor is selling the equipment is the market value of the equipment that is more than what might be obtained at an auction sale." *Id*. Does this mean that the sale price is the market value? Or is it simply the price the Debtor claims to have found a buyer willing to pay? Or that an auction would generate less? Or something else entirely?

After the fact, the Debtor had the husband of an employee of a buyer vaguely justify a sale price for some unspecified pieces of the Debtor's equipment. That evidence should be given no weight.

### IV. **CONCLUSION**

The Debtor had an opportunity to prove its proposed sales met the standard required by Bankruptcy Code § 363(b), e.g., that the price was reasonable, the property was marketed, the transaction was negotiated at an arm's length. The Debtor did not take advantage of that opportunity. The evidence submitted fails to demonstrate that these sales are approvable under § 363(b). Accordingly, Anvil respectfully requests the Court deny the motions.

///

///

Dated: May 27, 2025

**Fox Rothschild LLP**

*/s/ Jack Praetzellis*
Michael A. Sweet
Jack Praetzellis
Noah Thomas
Attorneys for Creditor
Anvil Builders

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents entitled: SUPPLEMENTAL OBJECTION OF ANVIL BUILDERS TO SALE MOTIONS [DOCKET NOS. 95, 97, 110 AND 112] will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 5/27/25, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jamie P. Dreher    jdreher@downeybrand.com
- Michael C. Fallon    fallonmc@fallonlaw.net, manders@fallonlaw.net
- Michael C. Fallon    mcfallon@fallonlaw.net, manders@fallonlaw.net
- Alan W Forsley    alan.forsley@flpllp.com
- Gabriel P Herrera    gherrera@kmtg.com, bxiong@kmtg.com
- Paul Gregory Leahy    Paul.Leahy@usdoj.gov
- Matthew P. Minser    mminser@sjlawcorp.com
- Office of the U.S. Trustee / SR    USTPRegion17.SF.ECF@usdoj.gov
- Jack Praetzellis    jpraetzellis@foxrothschild.com, jack-praetzellis-1683@ecf.pacerpro.com
- Michael A. Sweet    msweet@foxrothschild.com, michael-sweet-6337@ecf.pacerpro.com
- Philip J. Terry    pjterry@cmprlaw.com, dhayes@cmprlaw.com
- Jennifer C. Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

**2. SERVED BY UNITED STATES MAIL**: On N/A, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on N/A, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 5/27/2025 | Kimberly Hoang | /s/ Kimberly Hoang |
| *Date* | *Printed Name* | *Signature* |

Active\118534396.v2-1/12/21