Michael C. Fallon, SBN 088313
Michael C. Fallon, Jr. SBN
100 E Street, Suite 219
Santa Rosa, California 95404
Telephone: (707) 546-6770
Facsimile: (707) 546-5775
mcfallon@fallonlaw.net
fallonmc@fallonlaw.net

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In Re:                        Case No. 25-10088 WJL

Kingsborough Atlas Tree Surgery, Inc.      Chapter 11

       Debtor.
_____/

## DEBTOR'S PLAN OF REORGANIZATION
### (June 18, 2025)

This Plan of Reorganization (hereinafter this "Plan") is proposed by Kingsborough Atlas Tree Surgery, Inc. ("Debtor"). Through this Plan Debtor seeks to resolve and reorganize its financial affairs. Please refer to the accompanying Disclosure Statement for a discussion of the history, assets and liabilities, and for a summary and analysis of this Plan. All creditors are encouraged to consult the Disclosure Statement before voting to either accept or reject this Plan.

Dated: June 18, 2025

/s/ *Michael C. Fallon*

_____
Michael C. Fallon
Attorney for Debtor

# I

## DEFINITIONS

The following terms when used in this Plan shall, unless the context otherwise requires, have the following meaning:

"Administrative Claim" means a Claim for any cost or expense of administration of kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through and including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtors under Section 365 of the Bankruptcy Code, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

"Administrative Claims Bar Date" means that date which is thirty (30) days following the date of the notice of the Confirmation Date.

"Allowed" or "Allowed Amount" means the amount in which any Claim or Interest is allowed. Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the Petition Date.

"Allowed Administrative Claim" means all or any portion of Administrative Claim that has either been Allowed by a Final Order or has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

"Allowed Claim" means a Claim (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E, or F of the Debtors's Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c)  which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if (1) an objection to the allowance thereof is interposed by a party in interest within the time

**DEBTOR'S PLAN OF REORGANIZATION**

fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order, or (2) the Claim has already been satisfied.

"Allowed Unsecured Claim" means any Allowed Claim that is not an Allowed Secured Claim, including the unsecured Claims of undersecured Creditors and Rejection Claims, but excluding Administrative Claims, Priority Claims and Tax Claims.

"Available Cash" means any and all cash and cash equivalents owned or held by the Reorganized Debtors available for payment of Claims, Allowed Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and after reserving for expenses incurred and anticipated to be incurred as provided for under the Plan.

"Avoidance Actions" means causes of action of the Debtors under Chapter 5 of the Bankruptcy Code.

"Bankruptcy Cases" or "Cases" means the bankruptcy case commenced by the Debtors filing with the Bankruptcy Court of their Voluntary Petitions under Chapter 11 of the Bankruptcy Code, Case No. 25-10088.

"Bankruptcy Code" means Title 11, United Stated States Code, § 101, et seq. as in effect and applicable to the Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division or such other court exercising jurisdiction over the Case.

"Bankruptcy Estate" means the estate created by the commencement of the Bankruptcy Case and comprised of the property described in Section 541 of the Bankruptcy Code.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure Promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

"Claim" means any (a) right to payment, whether or not such right is reduced to judgement, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right payment, whether or not such right to an equity remedy is reduced to judgement, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured.

"Claims Bar Date" means June 30, 2025, the date set by the court for the filing of proofs

2   **DEBTOR'S PLAN OF REORGANIZATION**

of claim.

"Confirmation" means the entry by the Bankruptcy Court of the Order of Confirmation.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Order of Confirmation.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

"Creditor" means any entity holding a Claim against the Debtors.

"Debtor" means Kingsborough Atlas Tree Surgery, Inc.

"Debtor's Professionals" means Michael C. Fallon, and/or his respective successors, if any; and Philip J. Terry and the Law Firm of Carle Mackie Power & Ross, LLP; and such other professionals whose employment by the Debtor prior to Confirmation is approved by order of the Bankruptcy Court, if any, and following the Effective Date, any professionals engaged by the Recognized Debtor to represent or assist them in fulfilling its duties and obligations as the Reorganized Debtor under the Plan, including such accountant(s) as the Reorganized Debtor may select to complete the Debtor's tax returns and other requirements fillings with governmental authorities having jurisdiction over the Reorganized Debtor and such legal professionals as might be appropriated to assist in administering the Plan, the Bankruptcy Cases and the Bankruptcy Estates.

"Disbursing Agent" means Debtor.

"Disputed Claim" means a Claim against the Debtors (a) as to which a proof of Claim has not been filed and that has been listed in the Debtor's Schedules as disputed, contingent or unliquidated, or; (b) as to which an objection or adversary proceeding has been filed within the time fixed by the Bankruptcy Court and with objection and adversary proceeding has not been withdrawn or disposed of by a Final Order.

"Distribution" means, as the context requires: (a) the cash to be provided under the Plan to the holders of Allowed Claims; or (b) the payment, transfer, delivery or deposit of cash to Creditors pursuant to the Plan.

"Distribution Date" means any date on which a Distribution is made pursuant to the Plan.

"Effective Date" means a date no later than the thirtieth (30th) day following the Confirmation Hearing.

"Final Order" means an order entered on the docket by the Bankruptcy Court as to which no timely filed notice of appeal is pending; or, if such appeal is pending, for which no stay pending has been issued.

"Legal Rate" means the interest rate allowed on judgements entered in federal courts pursuant to 28 U.S.C §1961(a) which is the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calender week preceding the Petition Date.

"Order of Confirmation" means the order entered by the Bankruptcy Court approving and confirming the Plan in accordance with the provision of Chapter 11 of the Bankruptcy Code.

"Petition Date" means February 20, 2025, the date on which the Debtor filed its Voluntary Petition under Chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the Bankruptcy Case.

"Plan" means the Debtor's Plan of Reorganization Dated June 18, 2025, including any modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

"Priority Claim" means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

"Pro Rata" means, with respect to any Distributions to be made to the holder of an Allowed Claim or Interest, the proportion that such Allowed Claim or Allowed Interest bears to the aggregate of all outstanding Allowed Interest in the same Class.

"Reorganized Debtor" means the Debtor on and after the Effective Date.

"Retained Claims" means any Claim, or cause of action created by contract, tort, equity, or statute, owned or held by the Debtor against any Person as of the Effective Date, including Avoidance Actions and those Retained Claims referred to in Article X.

"Secured Claim" means a Claim secured by a lien, security interest, or other charges against or interest in property in which the Debtor has an interest or that is subject to setoff

4                          DEBTOR'S PLAN OF REORGANIZATION

under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Allowed Claim in the Debtors's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"Tax Claim" means any Allowed Claim against the Debtor entitled to priority pursuant to Section 506(a)(8) of the Bankruptcy Code.

A term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

## II

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The Allowed Claims are designated and classified below for purposes of the Plan. Except to the extent that the Plan provides otherwise, a Claim that may be included in more than one class is classified in a particular class only to the extent that it qualifies within the description of that class, and is placed in a different class to the extent it qualifies within the description of such different class.

### 2.1   Class 1 - Consists of the Allowed Claim of Ally Financial

2.1.1 Class Description. The Class 1 claim consists of the claim of Ally Financial ("Ally") that is secured by a 2020 Ford F-350 Super Duty Pickup VIN 1FT7W3BT9LEE07487 (the "Truck").

2.1.2 Treatment. Debtor shall sell the Truck or before January 1, 2026, with the consent of Ally in a manner and at a sale price agreed upon by Debtor and Ally. Ally shall retain its lien on the Truck as well as all other rights and remedies available to it under the subject loan documents,  which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date.  When Ally's Allowed Secured Claim has been paid, Ally shall release its security in the Truck.

2.1.3 Impairment and Voting. Ally is impaired under the Plan and therefore Ally is entitled to vote on the Plan.

**DEBTOR'S PLAN OF REORGANIZATION**

### 2.2   Class 2 - Consists of the Allowed Claim of Caterpillar Financial

2.2.1 Class Description. The Class 2 claim consists of the claim of Caterpillar Financial ("CAT") that is secured by a 2021 Rotobec RPA 3045 (08407000-1-1) and a 2021 Westtech C350 (8120686) (the "Equipment").

2.2.2 Treatment.  Debtor shall sell the Equipment on or before January 1, 2026, with the consent of CAT in a manner and at a sale price agreed upon by Debtor and CAT. CAT shall retain its lien as well as all other rights and remedies available to it under the subject loan documents, which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date. When CAT's Allowed Secured Claim has been paid, CAT shall release its security interest in the Equipment.

2.2.3 Impairment and Voting. CAT is impaired under the Plan and therefore CAT is entitled to vote on the Plan.

### 2.3   Class 3 - Consists of the Allowed Claim of Commercial Credit Group

2.3.1  Class Description. The Class 3 claim consists of the claim of Commercial Credit Group ("CCG") that is secured by a portfolio of equipment that is particularly described in Debtor's Official Form 106 A/B and by a blanket lien on all of the equipment owned by Debtor, with the exception of the titled or certificated trucks, trailers and the like (the "Equipment").

2.3.2  Treatment. Debtor shall sell the Equipment on or before January 1, 2026, with the consent of CCG in a manner and at a sale price agreed upon by Debtor and CCG.  CCG shall retain its lien on the Equipment as well as all other rights and remedies available to it under the subject loan documents, which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date. When CCG's Allowed Secured Claim has been paid in full, CCG shall release its security in the Equipment.

2.3.3  Impairment and Voting. CCG is impaired under the Plan and therefore CCG is entitled to vote on the Plan.

### 2.4   Class 4 - Consists of the Allowed Claim of Celtic Bank

2.4.1 Class Description.  The Class 4 claim consists of the claim of Celtic Bank ("Celtic") that is secured by a 2018 Vrmeer BC2100XL VIN 1VR2212Y9H1002038; a 2019 Vermeer WC2300XL VIN RC302J9F1002004; and a 2019 Vermeer SC552 VIN

**DEBTOR'S PLAN OF REORGANIZATION**

1VR9138U3L1000344 (the "Equipment").

2.4.2  Treatment. Debtor shall sell the Equipment on or before January 1, 2026, with the consent of Celtic in a manner and at a sale price agreed upon by Debtor and Celtic.  Celtic shall retain its lien as well as all other rights and remedies available to it under the subject loan documents, which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date. When Celtic's Allowed Secured Claim has been paid, Celtic shall release its security in the Equipment.

2.4.3  Impairment and Voting. Celtic is impaired under the Plan and therefore Celtic is entitled to vote on the Plan.

**2.5.  Class 5 - Consists of the Allowed Claim of Ford Motor Credit Company LLC**

2.05.1 Class Description. Class 5 claim consists of the claim of Ford Motor Credit Company LLC  ("Ford") that is secured by a portfolio of trucks that is particularly described in Claims 18 through 43 (the "Trucks").

2.5.2 Treatment. Debtor shall sell the Trucks on or before January 1, 2026, with the consent of Ford in a manner and at a sale price agreed upon by Debtor and Ford. Ford shall retain its liens as well as all other rights and remedies available to it under the subject loan documents,  which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date. When Ford's Allowed Secured Claim has been paid, Ford shall release its security in the Trucks.

2.5.3 Impairment and Voting. Ford is impaired under the Plan and therefore Ford is entitled to vote on the Plan.

**2.6  Class 6 - Consists of the Allowed Claim of Mitsubitshi-Hitachi Capital American**

2.6.1 Class Description. The Class 2 claim consists of the claim of Mitsubitshi-Hitachi Capital American ("Mitsubitishi") that is secured by a 2021 Ford F-350 Super Duty VIN 1FT7W3BT3MEC62559 and a 2021 Ford F-350 Super Duty VIN 1FD8X3FT9MEC82421 (the "Trucks").

2.6.2 Treatment.  Debtor shall sell the Trucks on or before January 1, 2026, with the consent of Mitsubishi in a manner and at a sale price agreed upon by Debtor and Mitsubishi.

7

**DEBTOR'S PLAN OF REORGANIZATION**

Mitsubitshi shall retain its lien as well as all other rights and remedies available to it under the subject loan documents, which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date. When Mitsubitshi's Allowed Secured Claim has been paid, Mitsubitshi shall release its security interest in the Trucks.

2.6.3 Impairment and Voting. Mitsubitshi is impaired under the Plan and therefore Mitsubitshi is entitled to vote on the Plan.

### 2.7 Class 7 - Consists of the Allowed Claim of Plumas Bank

2.7.1 Class Description. The Class 3 claim consists of the claim of Plumas Bank ("Plumas") that is secured by a portfolio of truck that is particularly described in Debtor's Official Form 106 A/B (the "Trucks").

2.7.2 Treatment. Debtor shall sell the Trucks on or before January 1, 2026, with the consent of Plumas in a manner and at a sale price agreed upon by Debtor and Plumas. Plumas shall retain lien as well as all other rights and remedies available to it under the subject loan documents, which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date. When Plumas' Allowed Secured Claim has been paid, Plumas shall release its security interest in the Trucks.

2.7.3 Impairment and Voting. Plumas is impaired under the Plan and therefore Plumas is entitled to vote on the Plan.

### 2.8 Class 8 - Consists of the Allowed Claim of US Bank

2.8.1 Class Description. The Class 8 claim consists of the claim of US Bank that is secured by a 2020 Ford Sentra VIN 1FMCU9G68LUA362222020 (the "Auto").

2.8.2 Treatment. Debtor shall sell the Auto on or before January 1, 2026, with the consent of US Bank in a manner and at a sale price agreed upon by Debtor and US Bank. US Bank shall retain its lien as well as all other rights and remedies available to it under the subject loan documents, which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date. When US Bank's Allowed Secured Claim has been paid, US Bank shall release its security in the Auto.

2.8.3 Impairment and Voting. US Bank is impaired under the Plan and therefore US Bank is entitled to vote on the Plan.

8                    DEBTOR'S PLAN OF REORGANIZATION

### 2.9 Class 9 - Consists of the Allowed Claim of John Deere Financial

2.9.1   Class Description. The Class 9 claim consists of the claim of John Deere Financial  ("John Deere") that is secured by equipment particularly described in Claim 10 filed herein on April 15, 2025 (the "Equipment").

2.9.2   Treatment.  Debtor shall sell the Equipment on or before January 1, 2026, with the consent of John Deere in a manner and at a sale price agreed upon by Debtor and John Deere.  John Deere shall retain its lien on the Equipment as well as all other rights and remedies available to it under the subject loan documents, which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date. When John Deere's Allowed Secured Claim has been paid, John Deere shall release its security in the Equipment.

2.9.3 Impairment and Voting.  John Deere is impaired under the Plan and therefore John Deere is entitled to vote on the Plan.

### 2.10 Class 10 - Consists of the Allowed Claim of SBA

2.10.1 Class Description. The Class 10 claim consists of the claim of US Small Business Administration (the "SBA") that is secured by "All tangible and intangible personal property" by virtue of a "Note, Security Agreement and UCC- Financing Statement" (the "Personal Property").

2.10.2 Treatment.  Debtor shall sell the Personal Property, which is subject to UCC liens senior to the UCC lien held by SBA, on or before January 1, 2026, as provided in the treatment of Classes 1 through 9).  SBA shall retain its lien on the Equipment as well as all other rights and remedies available to it under the subject loan documents, which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date. SBA shall release its lien on the Personal Property when the UCC liens senior to the SBA lien on the Personal Property have been released as provided in this plan. All net sale proceeds, after the payment of the UCC liens senior to SBA, shall be paid to SBA until its claim is paid in full or in such amount as SBA and Debtor may agree. When SBA's  Allowed Secured Claim has been paid, SBA shall release its security interest in the remaining Personal Property.

2.10.3 Impairment and Voting. SBA is impaired under the Plan and therefore SBA is

entitled to vote on the Plan.

### 2.11   Class 11 - Consists of the Disputed Claim of Anvil Builders

2.11.1 Class Description. The Class 11 claim consists of the disputed and unliquidated claim of Anvil Builders and related entities ("Anvil") that Anvil claims is secured by all personal property owned by Debtor by virtue of the filing of a UCC- Financing Statement" (the "Personal Property").

2.11.2 Treatment.  Debtor shall sell the Personal Property, which is subject to UCC liens senior to the UCC lien held by Anvil, on or before January 1, 2026, as provided in the treatment of Classes 1 through 10 above). Anvil shall retain its lien, if any, on the Equipment as well as all other rights and remedies available to it under the subject loan documents, which loan documents shall ride through this bankruptcy and shall remain in full force and effect after the Effective Date except as otherwise ordered by the court. Anvil shall release its lien on the Personal Property when the UCC liens senior to Anvil on the Personal Property have been released as provided in this plan. All net sale proceeds, after the payment of the UCC liens senior to Anvil, shall be held in an interest bearing trust account in the name of Debtor's counsel at Exchange Bank, Santa Rosa Main Branch, Santa Rosa, California with Anvil's lien to attach to the sale proceeds.  The sale proceeds shall be held in trust until the court determines the nature and extent of Anvil's security interest.

2.11.3 Impairment and Voting. Anvil is impaired under the Plan and therefore Anvil is entitled to vote on the Plan.

### 2.12   Class 12 - Consists of  Allowed Claims of General Unsecured Creditors.

2.12.1 Class Description. Class 12 consists of all Allowed General Unsecured Claims that were incurred prior to the commencement of this case.

2.12.2 Treatment. Debtor anticipates there will be two sources of payment to the Allowed Claims of General Unsecured Creditors: (1) the proceeds received from the sale of Debtor's Equipment, after payment of the Class 1 through Class 10 claims that must be completed not later than January 1, 2026; (2) recovery from the litigation brought by Debtor against Anvil and related entities that was commenced by Debtor in the Sonoma County Superior Court prior to the commencement of the Chapter case that has since been removed to

this court. Debtor estimated the value of its assets to be $72,000,000 that included a $61,000,000 claim against Anvil Builders and related entities. Backing out from this total the roughly $300,000 in equipment that was foreclosed by First Financial Holdings, and backing out the roughly $4.5M in claims secured by the assets, the orderly liquidation of the assets should result in a substantial dividend to unsecured claims. The dividend to unsecured claims will be enhanced to the extent Debtor is successful in the pending litigation against Anvil Builders.

### 2.13   Class 13 - Equity

2.13.1 Class Description. Class 12 consists of the equity position in Debtor held by Richard and Cindy Kingsborough.

2.13.2 Treatment. Class 12 claimants shall retain their equity interest without modification.

2.13.3 Impairment and Voting. This class in unimpaired under the Plan and therefore is not entitled to vote.

**III**

**TREATMENT AND PROVISION FOR NON-CLASSIFIED CLAIMS**

**3.1   <u>Allowed Administrative Claims</u>**. Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an allowed Administrative Claim shall be paid in cash, in full upon the later of (a) the Effective Date, (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim, and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtors's business by a person other than an insider, within such time as payment is due pursuant to the terms giving rise to such Claim. Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code (including an estimation of expenses to be incurred after the Effective Date), other than by the Debtors's Professionals, must be filed on or before the Administrative Claims Bar Date or the holder of such Claim shall be forever barred from asserting such Claim or receiving any payment on account of such Claim.

**3.2   <u>Tax Claims</u>**. The holders of allowed Claims entitled to priority under 11 U.S.C. §

507(a)(8) ("Allowed Tax Claims") will be paid in full as follows:

**3.2.1  Franchise Tax Board** ("FTB").  Franchise Tax Board shall be paid in full on the Effective Date.

**3.2.2  Employment Development Department** ("EDD").  EDD shall be paid in full on the Effective Date.

**3.2.3 Sonoma County Tax Collector** ("Sonoma County"). Sonoma County shall be paid in full together with statutory interest in amount to be determined, after costs of administration are considered, no less than quarterly with the first distribution to be January 15, 2026, and continuing on the fifteenth day of each quarter thereafter until no funds remain for distribution.

**3.2.4  Internal Revenue Service** ("IRS"). Debtor is not aware that the IRS is entitled to payment of any kind.  However, to the extent a claim is owed, IRS shall be paid in full together with statutory interest in amount to be determined, after costs of administration are considered, no less than quarterly with the first distribution to be January 15, 2026, and continuing on the fifteenth day of each quarter thereafter until no funds remain for distribution.

## IV

## IMPLEMENTATION OF THE PLAN

**4.1 Implementation**.  Pursuant to 11 U.S.C. § 1123(a)(5)(B) Debtor will responsible for the implementation of the Plan.

**4.2  Management.**  Debtor, through its president vice-president, and principal shareholders, shall, without compensation, manage the implementation of the Plan.

**4.3  General Authority of Estate Representative**.  Debtor shall serve as representative of the Estate under Section 1123 and shall be responsible for and shall have authority to: (a) settle, resolve and object to Claims; (b) pay all fees payable under 28 U.S.C. § 1930;  (c) file any post-Confirmation reports required; (d) retain, employ and utilize such Professionals  as may be necessary without further approval of the Bankruptcy Court; (e) abandon property of the estate that is determined to be burdensome or on inconsequential value; (f) do all things necessary and appropriate to fulfill the duties and obligations; and (g) move for the entry of a Final Decree and the closing of the Chapter 11 Case.

**4.4 Retained Power to Sell Free and Clear of Liens**. The Reorganized Debtor and/or the debtor shall retain the Estate's pre-confirmation rights and powers to sell its property free

and clear of liens and interests by noticed motion pursuant to Bankruptcy Code § 363(f), as to any lien or interest whether scheduled or unscheduled, and whether perfected or unperfected. Creditors reserve any and all grounds to object to such relief. The Court expressly reserves jurisdiction over those matters.

**4.5 Distributions and Claims**.

**4.5.1 Claims.** Subject to the deadlines in the Plan, distributions will be made to Creditors when its Claims are Allowed Claims, as defined in the Plan. Proofs of Claim, when required, had to be filed with the Bankruptcy Court no later than the applicable Claims Bar Date (which for most prepetition Claims is June 30, 2025) or the applicable Governmental Unit Claims Bar Date for prepetiton tax and similar Claims. However, Bankruptcy Rule 3001(b) provides that it is not necessary for a Creditor to file a proof of Claim if its Claim has been listed on the Debtor Schedules filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Rule 1007(a)(3) of the Bankruptcy Rules, and is not listed as disputed, contingent, unliquidated or unknown as to amount. Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable bar date, proofs of Claim may not be filed or amended unless the amendment is solely to decrease the amount or priority. Distributions to Creditors under the Plan will be made to the Persons shown on the Debtor' or the Bankruptcy Court's records on the Effective Date.

**4.5.2 Distribution Account**. Debtor shall hold the proceeds received from the sale of any of its assets in a segregated trust account for the benefit of holders of Allowed Claims.

**4.5.3 Timing of Distributions - Allowed Secured Claims.** Debtor shall make Distributions to the holders of the Allowed Secured Claims within seventy-two (72) hours of receipt of the sale proceeds.

**4.5.4 Timing of Distributions - Allowed Unsecured Claims.** Distributions to Allowed Unsecured Claims in amount to be determined after costs of administration are distributed considered no less than quarterly with the first distribution to be January 15, 2026, and continuing on the fifteenth day of each quarter thereafter until no funds remain for distribution.

**4.5.5 Reserve for Disputed Claims**. The Disbursing Agent shall retain a reserve in the Distribution Account in an amount sufficient to make a Pro Rata Distribution to Disputed Claims, and shall promptly make such Distribution when any Disputed Claim becomes an Allowed Claim.

**4.6 Prosecution of Retained Claims**. The Reorganized Debtor shall retain the right to collect and prosecute all of the Retained Claims.

**4.7 Tax Returns and Payments**.  The Reorganized Debtor shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtor and the Reorganized Debtor on a timely basis (other than Tax Claims provided for under the Plan).

**4.8  Organizational Matters**.   The Articles of Incorporation of the Debtor shall be deemed amended, as of the Effective Date, to prohibit the issuance of nonvoting equity securities and the issuance of any new class of voting equity securities until such time as all classified and  unclassified creditors are paid in full.

**4.9 Further Orders**.  Upon motion by the Debtor, on not less than ten (10) days' notice to the Notice Parties, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

**4.10  Insurance Policies**.  To the extent any insurance policies exist in which either the Debtor has an insurable or other interest in or right to make a claim, such policies shall remain available, before and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Debtor and/or the Debtor's current or former management that may be covered by such policies.

**4.11 Post-Confirmation Operating Expenses**. From and after the Effective Date, the Reorganized Debtor may incur and pay operating expenses in the ordinary course of business, including the compensation and reimbursement of the Debtor's Professionals for post-confirmation services.  Compensation and reimbursement of the Debtor's Professionals for pre-confirmation services shall remain subject to authorization by the Bankruptcy Court, after notice and hearing, pursuant to Bankruptcy Code Section 330.

**4.12 Post-Confirmation Notice.**

**4.12.1 Notice Generally**.  To the extent any action taken in the Bankruptcy Case after the Effective Date requires notice under the Bankruptcy Code or the Bankruptcy Rules, notice shall not be required to any Person whose Claims have been paid in full.

**4.12.2 Notice Procedure.**  Whenever the Plan requires the Reorganized Debtor to comply wth the Notice Procedure (in such circumstance, the "Notifying Party"), the Notifying Party shall transmit a written notice to the Notice Parties (each, a "Notice Recipient") of the proposed action.  The Notifying Party shall be authorized to take any action proposed to be taken in such notice fifteen days after delivery of such notice unless before the expiration of such 15-day period a Notice Recipient has filed an objection to such proposed action with the Bankruptcy Court and scheduled a hearing on such objection with thirty days after filing of such objection and upon not less than 20 days notice to all Notice Parties.  If any such objection is filed, the Notifying Party will not take the proposed action unless the Court approves such

**DEBTOR'S PLAN OF REORGANIZATION**

action or the objecting party withdraws the objection.

**4.13 Retention of Professionals by the Debtor**.  Debtor may, without further order of the Bankruptcy Court, retain such law firms, accounting firms, real estate brokers or agents, experts, advisors, agents, consultants, investigators, appraisers, auctioneers, and other professionals as it may deem necessary, to aid it in the performance of its responsibilities under this Plan.  All professionals employed by the Reorganized Debtor, including the Debtor's Professionals, shall be entitled to payment of its post-Confirmation Date fees and reimbursement of expenses on a monthly basis, based on the service of a detailed statement on the Debtor.  Pre-confirmation compensation remains subject to the noticed motion requirements of Bankruptcy Code Section 330.

**4.14 Post-Confirmation Reports, Fees, and Final Decree.**

**4.15.1 U.S. Trustee Fees.** Not later than twenty (20) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Reorganized Debtor shall pay to the United States Trustee the quarterly fee for such quarter until this case is converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

**4.15.2 Post-Confirmation Reports**. Not later than twenty (20) days after the end of each calendar quarter which ends after the Effective Date, the Reorganized Debtor shall file and serve upon the United States Trustee separate quarterly Post-Confirmation Operating Reports in substantially the form provided by the United States Trustee. Further reports shall be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

**4.15.3 Final Decree**. After the Plan is substantially consummated, the Reorganized Debtor will file an application for a Final Decree, and will serve the application as provided in the Local Rules.

**V**

**PROOFS OF CLAIM AND INTEREST; OBJECTIONS**

**5.1 Time for Filing Proofs of Claim**.  Proofs of Claim, when required, shall be filed with the Bankruptcy Court no later than the applicable Claims Bar Date, or such Claims shall be conclusively deemed barred and disallowed.

**5.2  Evidence of Claim**.  For purposes of any Distribution under the Plan, the Disbursing Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the first Distribution Date.  The Reorganized Debtor, the Disbursing Agent, and their professionals shall be entitled to recognize and deal for all purposes with only

those Creditors and Equity Security Holders of record with the Bankruptcy Court as of the first Distribution Date.

**5.3 Amendments to Claims**.  Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable  bar date, proofs of Claim and proofs of interest may not be filed or amended except for amendments to proofs of Claim to decrease the amount or priority thereof.

**5.4 Claim Objections.**  The Reorganized Debtor shall have the responsibility to review Claims filed against the Debtor, to file objections as appropriate, and to resolve Disputed Claims.

**5.5 Distributions**.  Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated or contingent, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly.

**VI**

**DEFAULT**

If the Reorganized Debtor shall default in the performance of any of its obligations under the Plan, and shall not have cured such default within a period of ten (10) days after receipt of written notice of default from any party in interest affected by the alleged default, then such party in interest may file a motion with the Bankruptcy Court seeking an order directing the Reorganized Debtor to perform such obligations.  If the Reorganized Debtor defaults in the performance of any material obligation under the Plan, any party in interest, including the Office of the United States Trustee, may file a motion with the Bankruptcy Court seeking an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code.  If such motion is granted, the Plan shall terminate, and all property of the Reorganized Debtor shall revest in the Chapter 7 estate.  Such property shall be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code.  Any party in interest, including the Reorganized Debtor, may oppose any such motion.

**VII**

**PRESERVATION OF RETAINED CLAIMS**

Except as expressly set forth herein, nothing in the Plan shall be deemed to constitute a waiver of the powers of the debtor as a debtor in possession under the Bankruptcy Code, the Bankruptcy rules or the Local Rules and Debtor shall retain after the Confirmation Date and after the Effective Date all powers granted by the Bankruptcy Code, the Bankruptcy Rules and

the Local Rules, including, without limitation, recovery of property and objections to, and/or subordination of Claims. Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim, cause of action or claim for relief held by Debtor unless the Plan or Confirmation Order specifically and unambiguously so provides. Debtor intends that the non-disclosure or non-discussion of any particular Claim, cause of action or claim for relief held by Debtor shall not be construed as a settlement, compromise, waiver or release of any such Claim, cause of action or claim for relief held by Debtor. Except as otherwise provided in the Plan or the Confirmation Order, Debtor reserves any and all of its Claims and rights against any and all third parties, whether such Claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date and/or Distribution Date. Specifically, Debtor reserves any and all of its Claims and rights against Anvil Builders and related entities as set forth in the Adversary Proceedings identified as APN 25-01005 and APN 25-01008, and other such claims Debtor may have against the Defendants identified to in the Adversary Proceedings. The entry of the Confirmation Order shall not constitute res judicata as to or otherwise bar, estop or inhibit any actions by Debtor upon any Claims it holds as identified herein or otherwise.

## VIII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case (a) to enforce the provisions, purposes, and intent of the Plan, (b) to determine the allowance or disallowance of Claims, (c) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, Claims, causes Of action or claims for relief held by the Reorganized Debtor against any party, including the recovery of property and subordination of Claims, (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan, (e) to adjudicate controversies arising from the terms of the Plan, (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case, (h) to facilitate the consummation of the Plan, (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation, and (j) to hear and determine any Claim of any Persons of any nature whatsoever against the Debtor's professionals arising in or related to the Case, and (k) to enter a Final Decree closing the Bankruptcy Case. If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of this Article.

17   **DEBTOR'S PLAN OF REORGANIZATION**

# IX

## EFFECT OF ORDER OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation shall be as provided in Section 1141 of the Bankruptcy Code, and as follows:

**9.1 Binding Effect of Plan**. The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Equity Security Holder, whether or not such Creditor or Equity Security Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Equity Security Holder is impaired under the Plan, and whether or not such Creditor or Equity Security Holder has accepted or rejected the Plan.

**9.2 Vesting of Assets**. All assets of the Estate, including all cash under control of the debtor, all tangible and intangible property of the estate shall vest in the debtor on the Effective Date for the benefit of the Holders of Claims. Debtor shall manage and distribute the Assets in accordance with the terms of this Plan and the Confirmation Order for the sole purpose of consummating and carrying out the terms of this Plan. Debtor will be a "Representative of the estate" under Bankruptcy Code § 1123(b)(3)(B); shall have the rights and powers of an appointed trustee un a chapter 11 case; and in accordance with Bankruptcy Code § 1123(b), Debtor will retain and may enforce any claims, demands, rights and causes of action that the Estate may hold against any Person. Nothing in this paragraph limits any other rights and powers granted Debtor under this Plan or the Bankruptcy Code.

**9.3 Grant of Discharge**. Except as otherwise provided in this Plan, in the Confirmation Order, or in 11 U.S.C. § 1141(d)(3), Confirmation shall be a discharge, effective as of the Effective Date and pursuant to 11 U.S.C. § 1141(d)(1), of any and all debts of the Debtor that arose at any time before Confirmation. The discharge shall be effective as to each Claim regardless of whether a proof of claim therefor was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept this Plan. The Confirmation Order shall be deemed to be a Final Order disallowing any claim not filed as of the Effective Date.

**9.4 Effect of Discharge**. The discharge release provided for under this Plan shall have the effects set forth in the Bankruptcy Code including, but not limited to:

(a) voiding any judgment obtained against the Debtor on any discharged debt; and;

(b) operating as an injunction against the commencement or continuation of any action to collect, recover, or offset either any discharged debt from the Debtor, the Reorganized Debtor, or its Estate or any property of the Debtor, the Reorganized Debtor, or its Estate,

except as otherwise permitted by this Plan, the Bankruptcy Code, or order of the Court.

**9.5 Full Satisfaction of Claims**. Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan shall constitute full and complete satisfaction and release of all Claims, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Reorganized Debtor, the Estate, or any assets or property of the Debtor, the Reorganized Debtor and the Estate. Except with respect to Administrative Claims and Claims described in Bankruptcy Rule 3002(c)(3), the Confirmation Order shall be deemed to be a Final Order disallowing any claim not filed as of the Effective Date.

**9.6 Reservation of Powers**. Nothing in the Plan shall be deemed to have constituted a waiver of the any powers held by the Debtor as Debtor-in-possession under the Bankruptcy Code, the Bankruptcy Rules or the Local Rules. The Reorganized Debtor shall retain all powers granted by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to a trustee or debtor-in-possession, including those with respect to recovery of property and objections to, and/or subordination of, Claims and Interests.

**9.7 Limitation of Liability**. On and after the Effective Date, neither the Liquidating Trustee, nor any of his agents, employees, and Professionals, shall have or incur any liability to any Person for any authorized act taken or authorized omission made in good faith in connection with or related to the Bankruptcy Case(s) or the Estate, including objections to or estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan. Nothing herein shall be deemed to release any party from any claims for willful misconduct, breach of fiduciary duty, or gross negligence.

X

**EXECUTORY AND CONTRACTS AND UNEXPIRED LEASES**

Debtor has a month to month tenancy for the property at 6263 Sebastopol Avene, Santa Rosa that is owned by Richard and Cindy Kingsborough at a cost of $11,000 per month. The property is used for the storage of the equipment. If the month to month tenancy is deemed to be an unexpired lease, Debtor assumes the lease.

**XII**

**MISCELLANEOUS**

**11.1 Plan Interpretation**. The headings contained in the Plan are for convenience of Case reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan. All references in the Plan to the singular shall be construed to include references to the plural and vice versa. All references in the Plan to any one of the masculine,

feminine or neuter genders shall be deemed to include references to both other such genders. All exhibits attached to the Plan are, by this reference, hereby incorporated into the Plan. All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

    **11.2  Modification**.  The Debtor may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan.  After the Confirmation Date, the Reorganized Debtor may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

    **11.3  Waiver**.  After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

    **11.4 Reservation of Rights.**  Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any  manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Debtor, except with respect to Confirmation of the Plan.

Dated: June 18, 2025                 Kingsborough Atlas Tree Service, Inc.

                                        By /s/ *Cindy Kingsborough*

                                        _____
                                        Cindy Kingsborough
                                        Its Vice-President

Dated:  June 18, 2025                /s/ *Michael C. Fallon*

                                          _____
                                        Michael C. Fallon
                                        Attorney for Debtor