MICHAEL A. SWEET (SBN 184345)
msweet@foxrothschild.com
JACK PRAETZELLIS (SBN 267765)
jpraetzellis@foxrothschild.com
NOAH THOMAS (SBN 358134)
nthomas@foxrothschild.com
**FOX ROTHSCHILD LLP**
345 California Street, Suite 2200
San Francisco, California 94104
Telephone:    (415) 364-5540
Facsimile:    (415) 391-4436

*Attorneys for Anvil Builders, Inc.*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>KINGSBOROUGH ATLAS TREE SURGERY, INC.<br><br>                       Debtor. | Case No. 25-10088 (WJL)<br><br>Chapter 11<br><br>**DECLARATION OF JACK PRAETZELLIS IN SUPPORT OF OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT**<br><br>**Hearing Information**<br>Date:     August 5, 2025<br>Time:     9:30 a.m.<br>Location: 1300 Clay Steet, Courtroom 220<br>             Oakland, California |

174782429.1

I, Jack Praetzellis, declare as follows:

1.     I am an attorney licensed to practice law in the state of California and am employed by the law firm Fox Rothschild LLP. The facts set forth herein are true and within the scope of my personal knowledge and if called upon to do so I would testify competently to these facts. I make this declaration in support of Anvil Builder's Objection to Approval of Disclosure Statement.

2.     Attached hereto as **Exhibit 1** is a true and correct copy of excerpts from a transcript of the Deposition of Todd Eisenhauer, taken July 11, 2025 (the "Eisenhauer Deposition").

3.     Attached hereto as collective **Exhibit 2** are true and correct copy of excerpts from a transcript of the Deposition of Cynthia Kingborough, taken July 11, 2025 (the "Kingborough Deposition")

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on July 22, 2025 in the San Francisco.

                                        */s/Jack Praetzellis*
                                       Jack Praetzellis

1

# EXHIBIT 1

1   UNITED STATES BANKRUPTCY COURT

2   NORTHERN DISTRICT OF CALIFORNIA

3   SANTA ROSA DIVISION

4   ---o0o---

5

6   In re:

7   KINGSBOROUGH ATLAS TREE          Case No. 25-10088 (WJL)
    SURGERY, INC.,
8
              Debtor.
9   _____/

10

11

12

13   Remote Deposition of

14   TODD EISENHAUER

15   Friday, July 11, 2025

16

17

18

19

20

21

22

23

24   Reported by:
     SUSAN I. STUART, CSR No. 6410
25   Job No. 18097

1                           ---o0o---

2           THE COURT REPORTER:  My name is Susan Stuart,

3    CSR Number 6410.

4           I will now swear in the witness.

5           (Whereupon the witness was

6           sworn in by the court reporter.)

7           THE COURT REPORTER:  Thank you.

8                           ---o0o---

9              EXAMINATION BY MR. PRAETZELLIS

10   Q.      Okay.  Good morning, Mr. Eisenhauer.  We met

11   before the deposition started.  My name is Jack

12   Praetzellis.  And, like I said, I have a strange last

13   name, so feel free to call me "Jack" or "counsel," I

14   won't take offense.

15          Just to begin, I think your counsel probably

16   went over this before the deposition, but I want to go

17   over some ground rules for the deposition.

18          The first one is you just swore an oath with

19   the court reporter to tell the truth.

20          Do you understand that that's the same oath

21   that you would give if you were sworn in court?

22   A.      Yes.

23   Q.      Okay.  How are you feeling today?  I ask that

24   question to make sure that you are feeling like you can

25   give your best testimony today.

1   A.        No.

2   Q.        Ever testified before in any kind of venue

3   whatsoever?

4   A.        Not that I can recall.

5   Q.        Okay.  So I understand that you worked for KBA

6   for a period of time, based on what you just testified

7   to.

8             Do you have any other connections to KBA aside

9   from you having worked there?

10  A.        My wife has worked there.

11  Q.        Any other connections?

12  A.        My -- my daughter worked there.

13  Q.        Okay.  And can you tell me the time frames that

14  your wife -- well, actually, strike that question.

15            Any other connections that you can think of to

16  KBA?

17  A.        No.

18  Q.        Okay.  Can you tell me the time frame that your

19  wife and daughter worked for KBA?

20  A.        My daughter for roughly, what, a year.

21            And my wife has worked there for 32 years, I

22  believe.

23  Q.        And can you give me their names, please, sir?

24  A.        Jamie Eisenhauer is my wife, and Hailey Coudret

25  is my daughter.

1  Q.        So aside from your family working for KBA, do

2  you have any other connections to KBA?

3  A.        No.

4  Q.        Are you personal friends with the owners of

5  KBA?

6  A.        Yes.

7            MR. TERRY:  Objection.  The question is vague

8  and ambiguous and overbroad.

9            But you answered it.

10           THE WITNESS:  Sorry.

11           MR. TERRY:  That's fine.

12  Q.        BY MR. PRAETZELLIS:  So just so you understand,

13  Mr. Terry may interpose objections throughout the

14  deposition from time to time.  If he interposes an

15  objection, just wait for him to finish his objection and

16  then you can go ahead and answer the question.  Unless

17  he says "attorney/client privilege" or something of that

18  nature, then you have to -- then you want to stop.  But

19  I think if he says that, we'll both go like this to make

20  you stop answering the question.

21           Okay.  So I think you said you are -- you are

22  personal friends with the owners of KBA.

23           Is that correct?

24  A.        Yes.

25  Q.        And how long have you -- would you consider

1    that you've been personal friends with the owners of

2    KBA?

3    A.        Thirty-five years.

4    Q.        So have you done social things with them?

5    A.        Yes.

6    Q.        Such as dinner at their house?

7    A.        Yes.

8    Q.        Maybe they go to your house for dinner, you go

9    out together, that kind of thing?

10   A.        Yes.

11   Q.        You've been to their -- their cabin in -- in

12   the mountains?

13   A.        Yes.

14   Q.        Do you -- are you aware of any connections that

15   you have to my client Anvil?

16   A.        No.

17   Q.        So you've never worked for Anvil?

18   A.        No.

19   Q.        Are you aware of litigation involving Anvil and

20   anybody?

21   A.        Yes.

22   Q.        What litigation is that?

23   A.        KBA.

24   Q.        Any -- can you unpack that, explain what you

25   mean?

```
 1              MR. TERRY:  I'm going to object to that as
 2    overbroad, calls for a narrative.
 3              Why don't you try another question.
 4    Q.        BY MR. PRAETZELLIS:  So I asked are you aware
 5    of any litigation, and you said KBA.
 6              What did you mean by "KBA"?
 7    A.        The -- the situation between Anvil and KBA.
 8    Q.        And what situation is that?
 9    A.        That there's litigation going on between them.
10    Q.        Do you know anything about any of the
11    particular details of that litigation?
12    A.        I know some.
13    Q.        What do you know?
14    A.        I know that there's litigation between these
15    two companies right now, and I know I no longer have a
16    job.
17    Q.        But you don't -- are you telling me you don't
18    know any of the details of that litigation?
19    A.        Well, not -- no.  No, I do not.
20    Q.        So you don't know what the dispute is about at
21    all?
22    A.        I know some of the -- some of the details, but
23    not everything.
24    Q.        What is your understanding of the details?
25    A.        That this -- this partnership or -- is not
```

In re: Hillsborough Area Treasury, Inc.
Focus Litigation Solutions

1    Ritchie Bros."

2           Do you see that?

3    A.      Yes.

4    Q.      Okay.  So we've -- we've sort of talked about

5    that before, but a couple follow-ups.

6           When you looked for similar equipment, was any

7    of the equipment that's being sold actually for sale on

8    any of these websites?

9    A.      Yes.

10   Q.      So the specific pieces of equipment that the

11   debtor is selling was also for sale on some of these

12   websites; correct?

13   A.      From other people, yes.

14   Q.      Yeah, yeah, of course, from other people.

15          And what were the prices that that equipment

16   was being sold for?

17   A.      I -- I can't recall specific prices.

18   Q.      Do you have an estimate?

19   A.      It would have been similar to the prices that

20   I've given.

21   Q.      So the equipment that was -- that's being sold

22   on these websites was in the same condition as the KBA

23   equipment?

24   A.      I don't recall exact pieces of equipment, but

25   yes.

1  Q.        What is Ritchie Bros.?

2  A.        An auction house.

3  Q.        And what do they -- what do they sell?

4  A.        Any type of construction equipment.  They're

5  the biggest auction company in the world.

6  Q.        What kind of buyer premiums do they charge, if

7  you know?

8  A.        Roughly ten to 15 percent.

9  Q.        Is that just from equipment to equipment that

10 the premium changes or --

11         MR. TERRY:  Objection.  Objection.  Vague,

12 ambiguous.

13         I don't understand your question when you say

14 "premium changes" or "equipment to equipment."  If you

15 could try that again.

16 Q.        BY MR. PRAETZELLIS:  I'm just trying to

17 understand.

18         You gave me a range of buyer premium ten to

19 15 percent; correct?

20 A.        Correct.

21 Q.        I'm just trying to understand when it's ten

22 percent, when it's 15 percent, and when it's sometimes

23 in the middle or somewhere in the middle.

24 A.        It depends on what you buy and how much.  It

25 goes off value.

1    it, the cost, serial number, condition of the trailer or

2    equipment.

3    Q.       Anything else?

4             MR. TERRY:  Description of the equipment?

5             THE WITNESS:  Yeah.  The -- no.

6    Q.       BY MR. PRAETZELLIS:  Any other documents or

7    agreements that will be written up to consummate this

8    transaction that you're aware of?

9    A.       Such as what?

10   Q.       I don't know.  I'm asking you if there's

11   anything else.  I mean it sounds like there isn't, but I

12   just want to make sure that there's nothing else.

13   A.       No.

14   Q.       Okay.  Has -- are you aware of whether or not

15   JCC has promised to -- to give the -- to provide

16   anything else other than that -- the money in connection

17   with the sale, any additional money to any individuals,

18   or -- yeah, let's start with that.

19   A.       I'm not understanding your question.

20   Q.       Yeah, sure.  I guess I just want to -- JCC,

21   they're going to buy this equipment.  And I want to

22   make -- so my question is, are they only paying the

23   money that is listed or are they also paying you a

24   commission or paying you a bonus if it closes or paying

25   the principals of the debtor extra money if it closes

```
 1   or, you know, providing some consideration additional to
 2   that which has been described in the sale motion?
 3   A.        Yes.
 4   Q.        They are?
 5   A.        Yes.
 6   Q.        What's that?
 7   A.        A percentage to myself.
 8             MR. TERRY:  A commission?
 9             THE WITNESS:  A commission.
10   Q.        BY MR. PRAETZELLIS:  So JCC is paying you a
11   commission?
12   A.        Correct.
13   Q.        And what's the commission?
14   A.        Ten percent.
15   Q.        And when was that arranged?
16   A.        At the same time as when this was arranged.
17   Q.        So it's in your financial interest for this
18   sale to close; correct?
19   A.        To an extent, yes.
20   Q.        Is the debtor aware that you are getting a ten
21   percent commission on this sale?
22   A.        Yes.
23   Q.        How was the debtor made aware of that?
24   A.        Verbal.
25   Q.        And when?
```

1    A.        At the time this was put into the bankruptcy

2    court.

3    Q.        Is there a reason that your declaration doesn't

4    say that?

5              MR. TERRY:  Doesn't say what?

6    Q.        BY MR. PRAETZELLIS:  That you're receiving a

7    ten percent commission if the sale closes.

8    A.        It's not from the bankruptcy court.  It's from

9    JCC.

10   Q.        And that's why it doesn't say that?

11             MR. TERRY:  I'm going to object to that.

12   Argumentative.

13   Q.        BY MR. PRAETZELLIS:  You can answer the

14   question.

15   A.        Could you repeat the question?

16   Q.        I asked if there was a reason the declaration

17   didn't describe the commission, and I understood you to

18   say because the commission comes from JCC, not the

19   bankruptcy court.

20   A.        Correct.

21   Q.        And that's the reason it's not in there is

22   because JCC is paying?

23   A.        Correct.

24             MR. TERRY:  Well, I'm going to make a belated

25   objection to the extent it calls for a legal conclusion.

1    Anyway --

2    Q.       BY MR. PRAETZELLIS:   So there have been other

3    sales in this case.

4            Are you aware of those other sales of equipment

5    that's not the subject of this motion we've been

6    discussing?

7    A.       Define other equipment.

8    Q.       Sorry, other -- other sales of other equipment.

9    So there was a sale to Davey, I believe.   And there have

10   been a few other sales.

11           Are you familiar with those?

12   A.       Yes.

13   Q.       Did you receive a commission for any of those

14   sales?

15           MR. TERRY:   I'm going to -- I'm going to object

16   to the question.   It goes beyond the scope of this

17   deposition.   This deposition is with respect to the

18   Amended Motion for Authority to Sell Personal Property.

19   And to the extent that you are going to get into the

20   question of commissions on other sales, I don't think

21   that's appropriate here.   We can talk about it offline

22   if you want, but I'm going to instruct him not to answer

23   that here in this proceeding.

24           I just don't -- it doesn't have anything to do

25   with the motion that your client is objecting to is the

```
 1    basis for this -- this objection.  You've gotten the
 2    information that you asked for.  He's advised of a
 3    commission.  I understand if you ask him more questions
 4    about it, it's a standard commission.
 5         Why it's not listed in the moving papers, you
 6    know, he's not able to answer that question and I'm not
 7    in a position to answer that question either.  So why
 8    don't we move on to another question.
 9  Q.      BY MR. PRAETZELLIS:  So you're not going to
10    tell me whether or not you received a commission in
11    connection with other sales?
12         MR. TERRY:  Yes.
13  Q.      BY MR. PRAETZELLIS:  You're going to follow
14    counsel's advice?
15         MR. TERRY:  I'm going to instruct him not to
16    answer that question.
17         MR. PRAETZELLIS:  I would just like him to say
18    he's going to follow your instruction.
19         THE WITNESS:  I would follow.
20         MR. PRAETZELLIS:  Actually, can we go off the
21    record for just a moment, is that all right?
22         MR. TERRY:  Sure.  Yeah.
23         (Break taken 11:14 to 11:36.)
24         MR. PRAETZELLIS:  Okay.  We are back on the
25    record.
```

In re: Kingsborough Atlas Tree Surgery, Inc.
Focus Litigation Solutions

1  Q.        BY MR. PRAETZELLIS:  Just to confirm, we took a
2  little break.
3            Did you talk to anybody other than your lawyer
4  during the break?
5  A.        No.
6  Q.        Okay.  So is it customary for you to receive a
7  commission of ten percent on the sale of equipment?
8  A.        It's the industry standard, yes.
9  Q.        And you -- you receive that commission when you
10 participate in sales; correct?
11 A.        Correct.
12 Q.        Okay.  And did you receive a commission of ten
13 percent on all of the other sales of the debtor's
14 equipment that have occurred in this case?
15 A.        No.
16 Q.        On any of the sales that have occurred in this
17 case?
18 A.        Yes.
19 Q.        So it's some, but not all?
20 A.        Yes.
21 Q.        And I just have one follow-up question on that,
22 which is, is it that you haven't been paid the
23 commission yet or it was just not agreed on some of the
24 sales?
25 A.        Was not agreed.

1    Q.        Okay.  All right.  And so your counsel and I

2    had agreed that I was going to have some limited

3    questions on that topic, and we're both reserving rights

4    to deal with it later, if necessary, so I will move on.

5           Okay.  I'm looking at the eighth sentence in

6    your declaration, which says, "In my opinion the price

7    at which the Debtor is selling the trailers is the

8    market value that is more than what might be obtained at

9    an auction sale."

10          Do you see that?

11   A.        Yes.

12   Q.        So is there anything that we haven't discussed

13   that this opinion is based on?

14   A.        I'm not understanding your question.

15   Q.        So I want to -- I want to ask for the basis of

16   your opinion, but I know that in our deposition so far

17   we've talked a lot about the reasons that you came to

18   the value of the equipment.

19          And I'm wondering if there are any reasons that

20   you have that opinion that we haven't talked about so

21   far?

22          MR. TERRY:  This is the opinion about the

23   selling of the equipment as opposed to an auction of the

24   equipment.

25          THE WITNESS:  When you take stuff to auction,

```
 1   Q.        And is that how auction houses work --

 2   A.        Yes.

 3   Q.        -- that you're aware of?

 4   A.        That I'm aware of.

 5   Q.        Okay.  Anything else that the opinion in this

 6   eighth sentence is based on that we haven't talked

 7   about?

 8   A.        No.

 9   Q.        And I see that it says "the trailers" in this

10   sentence, and I'm just wondering does that -- is that

11   supposed to include the light tower or not or what?

12   A.        The -- the light towers were listed earlier and

13   one was for parts.

14   Q.        Yeah.  And I -- let me cut you off.  I guess my

15   question is simply, like is this opinion supposed --

16   about the -- like the value being greater than an

17   auction, is it supposed to cover the light tower?

18   A.        Yes.

19   Q.        Okay.  It just happens to say "trailer" and not

20   "light tower"?

21   A.        Counsel wrote it up.  So, yes, I must have

22   missed that.

23   Q.        Okay.  So this is probably a sentence that

24   counsel wrote, not you?

25   A.        Correct.
```

In re Kingsborough Atlas Tree Surgery, Inc.
Focus Litigation Solutions

```
 1   Q.        All right.  Do you know if anybody else is
 2   getting a commission or a cut out of this sale to JCC
 3   other than you?
 4   A.        No.
 5   Q.        You don't know or nobody else is?
 6   A.        Nobody else is.
 7   Q.        Have you ever heard of Grafe Auction and Dudley
 8   Resources as an auctioneer?
 9   A.        Yes.
10   Q.        Is there a reason you didn't look at their
11   results to figure out the value of the equipment?
12   A.        They don't have them listed.
13   Q.        Do you know about their buyer premium and
14   seller premiums?
15   A.        I know about their buyer's premium.
16   Q.        Is it high?
17   A.        Fifteen percent.
18   Q.        Is that higher than Ritchie?
19   A.        Yes.
20   Q.        Do you know why it's higher?
21   A.        No, I don't.
22   Q.        Does a high buyer's premium discourage buyers?
23   A.        Possibly.  But if it's -- but if it's good
24   equipment, then -- and people need the equipment, they
25   will pay it.
```

1  Q.        But a buyer's premium just makes it more

2  expensive for the buyer; right?

3  A.        Yes.

4  Q.        So if like Ritchie had a piece of equipment on

5  its -- you know, for sale with a buyer premium of ten

6  percent and Grafe had one at 15 percent, like it would

7  be cheaper to buy it from Ritchie; right?

8  A.        There's -- there's many variables about that,

9  though.

10  Q.        What are those?

11  A.        It could be what the equipment is, where

12  it's -- where it's located.  I mean there's --

13  Q.        Oh, yeah, I'm sorry.  It was a bad question.

14  I'm imagining the same piece of equipment.  Like

15  everything is the same, the only difference is Ritchie

16  versus Grafe and the buyer's premium is ten to

17  15 percent.

18        It just means it's five percent more expensive

19  at Grafe; right?

20  A.        But Dudley also possibly could have better

21  connections, better -- more interested people as opposed

22  to Ritchie Bros.

23  Q.        Is Dudley bigger than Ritchie?

24  A.        No.  Ritchie is the biggest auction house in

25  the world.

In re: Kingsborough Atlas Tree Surgery, Inc.
Focus Litigation Solutions                                              Page: 63

```
 1                    REPORTER'S CERTIFICATE

 2

 3          I certify that the foregoing proceedings in the

 4   within-entitled cause were reported at the time and

 5   place therein named; that said proceedings were reported

 6   by me, a duly Certified Shorthand Reporter of the State

 7   of California, and were thereafter transcribed into

 8   typewriting.

 9          I further certify that I am not of counsel or

10   attorney for either or any of the parties to said cause

11   of action, nor in any way interested in the outcome of

12   the cause named in said cause of action.

13          IN WITNESS WHEREOF, I have hereunto set my hand

14   this 17th day of July, 2025.

15

16

17   _____

18   SUSAN I. STUART
     California CSR No. 6410

19

20

21

22

23

24

25
```

In re: Kingsborough Atlas Tree Surgery, Inc.
Focus Litigation Solutions

# EXHIBIT 2

1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SANTA ROSA DIVISION

4                 ---o0o---

5

6  In re:

7  KINGSBOROUGH ATLAS TREE         Case No. 25-10088 (WJL)
   SURGERY, INC.,
8
                Debtor.
9  _____/

10

11

12

13              Remote Deposition of

14          CYNTHIA KINGSBOROUGH

15          Friday, July 11, 2025

16

17

18

19

20

21

22

23

24  Reported by:
    SUSAN I. STUART, CSR No. 6410
25  Job No. 18097

1                    ---o0o---

2          THE COURT REPORTER:  My name is Susan Stuart,

3    CSR Number 6410.

4          I will now swear in the witness.

5          (Whereupon the witness was

6          sworn in by the court reporter.)

7          THE COURT REPORTER:  Thank you.

8                    ---o0o---

9          EXAMINATION BY MR. PRAETZELLIS

10   Q.        Okay.  Good afternoon, Miss Kingsborough.  My

11   name is Jack Praetzellis.  I am a lawyer for creditor

12   Anvil.

13          For the record, you sat through the prior

14   deposition of Mr. Eisenhauer and so I'm going to try and

15   do the introductory piece pretty quickly so we can just

16   move it along and get you in and out of here.  So if

17   I'm -- if you have questions or I'm talking too fast,

18   just let me know.

19          So you gave an oath just now to tell the truth.

20          Do you understand that that's the same oath you

21   would give if you were testifying in a court of law?

22   A.        Yes.

23   Q.        Is there any reason that you can't give your

24   best deposition testimony today?

25          For example, are you feeling unwell, under the

1  it to you --

2  A.        Yes.

3  Q.        -- before you signed it?

4            MR. TERRY:  Wait for him to finish the

5  question.

6            Go ahead.  Sorry about that.

7  Q.        BY MR. PRAETZELLIS:  It was the time that

8  Mr. Fallon e-mailed it to you before you signed it?

9  A.        Yes.

10 Q.        Okay.  Okay.  A couple questions about the

11 declaration itself.

12           Did you personally type it up?

13 A.        No.

14 Q.        Did you personally write any of the words in

15 this declaration?

16 A.        No.

17 Q.        How was it prepared?

18 A.        By counsel.

19 Q.        And is everything in the declaration accurate?

20 A.        Yes.

21 Q.        Are you aware of anything that is material

22 that's been omitted from it?

23 A.        I don't understand the question.

24 Q.        Are you aware of anything that is important --

25 you think is important to the sale motion that's been

1   omitted from this declaration?

2           MR. TERRY:  I'm going -- strike that.

3   Objection.  Overbroad, vague and ambiguous, and calls

4   for a legal conclusion.

5           But you can answer the question, if you

6   understand it.

7           THE WITNESS:  I don't understand it.

8   Q.      BY MR. PRAETZELLIS:  Well, so I guess -- let me

9   try again.

10          This is your declaration in support of this

11  motion to sell this property; right?

12  A.      Yes.

13  Q.      And Mr. Fallon wrote it?

14          MR. TERRY:  She said it was prepared by

15  counsel, so that's the testimony.

16  Q.      BY MR. PRAETZELLIS:  And it was prepared by

17  counsel; correct?

18  A.      Yes.

19  Q.      Okay.  And what I'm asking is, do you -- do you

20  think that there's anything important to this sale

21  motion that's not included in the declaration?

22          MR. TERRY:  And I'm going to object to the

23  extent it calls for a legal conclusion and it calls for

24  speculation.

25          With that objection, you can answer it if you

 1 | have an answer.
 2 |         THE WITNESS:  I don't think anything is
 3 | omitted.
 4 |         MR. TERRY:  You have to tell him.
 5 |         THE WITNESS:  I don't think anything was
 6 | omitted.
 7 | Q.        BY MR. PRAETZELLIS:  That's fine.  Your answer
 8 | is "I don't think anything important was omitted,"
 9 | that's fine.
10 | A.        Okay.
11 | Q.        I'm just trying to establish if that's your
12 | view or not.
13 |         Okay.  So aside from talking to your counsel,
14 | and I don't want to get information about that, have you
15 | had any conversations about this sale motion?
16 | A.        No.
17 | Q.        Okay.  Let's move on to the declaration.
18 | Starting at the very top here, it says, "I, Cindy
19 | Kingsborough, declare that my husband and I are the sole
20 | shareholders of Kingsborough Atlas Tree Surgery, Inc.,
21 | and that I am personally familiar with the statements in
22 | this declaration."
23 |         Do you see that?
24 | A.        Yes.
25 | Q.        Do you know why it doesn't say that if called

1  testimony is not a KBA employee.

2          Is that correct?

3  A.       That is correct.

4  Q.       And KBA didn't compensate him to value this

5  equipment; correct?

6  A.       That is correct.

7  Q.       Do you have any -- to your knowledge, any other

8  information about why we should rely on Mr. Eisenhauer's

9  valuation of this equipment that we haven't -- that you

10  haven't mentioned so far?

11  A.       No.  I think we've -- I think we've hit his

12  expertise, the reason for his expertise.

13  Q.       Okay.  When did the debtor learn about

14  Mr. Eisenhauer's commission to be paid in connection

15  with this sale?

16  A.       "The debtor" meaning --

17  Q.       KBA.

18  A.       -- KBA?

19  Q.       KBA.  When I say "KBA," I mean you or your

20  husband.

21  A.       On this particular I don't know exactly when.

22  Q.       Did you learn about it before the sale motion

23  got filed?

24  A.       Yes.

25  Q.       And Mr. Eisenhauer mentioned receiving

1    commissions on other sales that have occurred in this

2    case.

3            Do you recall that testimony?

4    A.      Yes.

5    Q.      And did the debtor, and that means you or

6    Mr. Kingsborough, know of those commissions before those

7    sale motions got filed?

8    A.      Yes.

9    Q.      Okay.  The second paragraph of Exhibit 3 it

10   says, "I believe the sale of the trailers Debtor no

11   longer needs will result in a benefit to the estate and

12   is therefore in the best interest of the estate."

13           Do you see that?

14   A.      Yes.

15   Q.      Okay.  Is there any equipment that's owned by

16   the debtor that the debtor needs?

17   A.      I don't understand the question.  Needs?

18   Q.      Well, so --

19           MR. TERRY:  Needs for what?  Needs for

20   operation, business operation?

21   Q.      BY MR. PRAETZELLIS:  Well, I'm just trying to

22   understand how this sentence -- well, maybe I'll ask it

23   another way.

24           Is this sentence true for every piece of

25   equipment that the debtor owns or has an interest in?

1        REPORTER'S CERTIFICATE

2

3        I certify that the foregoing proceedings in the

4   within-entitled cause were reported at the time and

5   place therein named; that said proceedings were reported

6   by me, a duly Certified Shorthand Reporter of the State

7   of California, and were thereafter transcribed into

8   typewriting.

9        I further certify that I am not of counsel or

10  attorney for either or any of the parties to said cause

11  of action, nor in any way interested in the outcome of

12  the cause named in said cause of action.

13        IN WITNESS WHEREOF, I have hereunto set my hand

14  this 17th day of July, 2025.

15

16

17  _____

18  SUSAN I. STUART
    California CSR No. 6410

19

20

21

22

23

24

25

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents entitled: DECLARATION OF JACK PRAETZELLIS IN SUPPORT OF OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 7/22/25, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jamie P. Dreher    jdreher@downeybrand.com
- Michael C. Fallon    fallonmc@fallonlaw.net, manders@fallonlaw.net
- Michael C. Fallon    mcfallon@fallonlaw.net, manders@fallonlaw.net
- Alan W Forsley    alan.forsley@flpllp.com
- Gabriel P Herrera    gherrera@kmtg.com, bxiong@kmtg.com
- Paul Gregory Leahy    Paul.Leahy@usdoj.gov
- Matthew P. Minser    mminser@sjlawcorp.com
- Office of the U.S. Trustee / SR    USTPRegion17.SF.ECF@usdoj.gov
- Jack Praetzellis    jpraetzellis@foxrothschild.com, jack-praetzellis-1683@ecf.pacerpro.com
- Michael A. Sweet    msweet@foxrothschild.com, michael-sweet-6337@ecf.pacerpro.com
- Philip J. Terry    pjterry@cmprlaw.com, dhayes@cmprlaw.com
- Jennifer C. Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

**2.** **SERVED BY UNITED STATES MAIL**: On  N/A, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.*

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method <u>for each person or entity served</u>): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on N/A, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.*

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 7/22/2025 | Kimberly Hoang | /s/ Kimberly Hoang |
| *Date* | *Printed Name* | *Signature* |