MICHAEL A. SWEET (SBN 184345)
msweet@foxrothschild.com
JACK PRAETZELLIS (SBN 267765)
jpraetzellis@foxrothschild.com
NOAH THOMAS (SBN 358134)
nthomas@foxrothschild.com
**FOX ROTHSCHILD LLP**
345 California Street, Suite 2200
San Francisco, California 94104
Telephone:    (415) 364-5540
Facsimile:    (415) 391-4436

*Attorneys for Anvil Builders, Inc.*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>KINGSBOROUGH ATLAS TREE SURGERY, INC.<br><br>                    Debtor. | Case No. 25-10088 (WJL)<br><br>Chapter 11<br><br>**ANVIL BUILDERS' SUPPLEMENTAL OBJECTION TO JCC TRANSPORT SALE MOTION**<br><br>Date:      August 5, 2025<br>Time:     9:30 am<br>Location: 1300 Clay Street, Courtroom 220<br>               Oakland, CA |

**I.     INTRODUCTION**

Creditor Anvil Builders, Inc. ("Anvil") objects to the Debtor's sale motion ("Sale Motion") seeking permission to sell certain equipment to JCC Transport (Dkt. No. 148) because the sale involves **payment of an undisclosed buyer's premium to Mr. Todd Eisenhauer**. During discovery in connection with this Sale Motion, Anvil learned the Debtor has been allowing Mr. Eisenhauer to collect a 10% buyer's premium from previously approved sales *and* intends to allow him to collect a similar commission on the instant sale. This is wholly improper. The Sale Motion should be denied. Furthermore, this conduct raises serious concerns about whether the Debtor should continue as a debtor-in-possession.

1

## II. RELEVANT LAW: A BUYER'S PREMIUM IS PROPERTY OF THE ESTATE

Section 541 broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of this case[.]" Bankruptcy Code § 541(a)(1), and § 541(a)(6) define estate property to include all "[p]roceeds . . . or profits of or from property of the estate." The Debtor owned equipment on the date of filing. These items were listed in its schedules. The sale of that equipment is the sale of property of the estate. A buyer's premium is a proceed or profit from that property of the estate. *See* Bankruptcy Code § 541(a)(6).

Most bankruptcy courts squarely presented with this question agree. "That a buyer's premium is added to the highest bid at the closing of the sale does not change the fact that it is part of the total amount received in exchange for the estate property." *In re THR & Assocs., Inc.*, No. 12-72022, 2018 WL 279741, at *5 (Bankr. C.D. Ill. Jan. 3, 2018) ("*THR & Assocs.*"). "A 'buyer's premium' is indistinguishable from a direct charge to the estate by the auctioneer for his services." *In re Maropa Marine Sales Serv. & Storage, Inc.*, 92 B.R. 547, 548 (Bankr. S.D. Fla. 1988); *see also Priddy v. Eley (In re Rossmiller),* 82 F.3d 426, 1996 WL 175369 at *2 (10th Cir.1996) (unpublished decision) (stating that the gross proceeds from an estate auction constituted property of the estate, and noting that "several bankruptcy courts have determined that a fee paid by a purchaser of estate assets to a broker or auctioneer is a commission paid from the estate's proceeds" and listing cases); *see also THR & Assocs.*, at *4 ("the weight of authority holds that amounts charged, retained, or collected as a buyer's premium are property of the bankruptcy estate."); *but see In re Remote Operating Sys., Inc.*, 238 B.R. 656, 660 (Bankr. N.D. Tex. 1999) (held buyer's premium not estate property, but described as an "unpersuasive" analysis in *THR & Assocs*. at *4).

A buyer's premium is property of the estate since the premium is a proceed from estate property. Bankruptcy Code § 541(a)(6). Beyond the Bankruptcy Code, however, failing to treat a buyer's premium as estate property could lead to problematic results and create a host of poor incentives for participants:

> As a policy matter, this Court would be loathe to endorse a procedure where money earned from estate proceeds could bypass the estate and go directly into an auctioneer's pocket without being accounted for. Such a practice could easily be

abused. It is essential that the case trustee, as a fiduciary of the estate, collect and account for all monies that result from the liquidation of estate property and then disburse those proceeds according to the distribution rules set forth in the Bankruptcy Code and Rules.

*In re Carpenter*, 392 B.R. 97, 104 (Bankr. D. Vt. 2008). A buyer's premium is property of the estate.

### III. DEBTOR PROPOSES TO PAY (AND PAID) A BUYER'S PREMIUM

Mr. Eisenhauer is a longtime friend of Mr. and Mrs. Kingsborough and former Debtor employee.[1] During his deposition relating to this Sale Motion (on July 11, 2025), Mr. Eisenhauer testified that as part of this sale, JCC would pay him a buyer's premium. Later he testified that other buyers from approved sales in this case had also paid him a buyer's premium.

> Q BY MR. PRAETZELLIS: So JCC is paying you a commission?
> A Correct.
> Q And what's the commission?
> A Ten percent.
> Q And when was that arranged?
> A At the same time as what this was arranged.[2]

The Debtor affirmatively knew of and approved of this arrangement before filing the Sale Motion:

> Q Is the debtor aware that you are getting a ten percent commission on this sale?
> A Yes.
> Q How is the debtor made aware of that?
> A Verbal.
> Q And when?
> A At the time this was put into the bankruptcy court.[3]

Furthermore, we do not need to take Mr. Eisenhauer's word for it, Mrs. Cindy Kingsborough, for the Debtor, testified consistently:

> Q Okay. When did the debtor learn about Mr. Eisenhauer's commission to be paid in connection with this sale?
> A The debtor meaning –
> Q KBA.
> A -- KBA?
> Q KBA. When I say KBA, I mean you or your husband.
> A On this particular I don't know exactly when.
> Q Did you learn about it before the sale motion got filed?

---

[1] Praetzellis Decl. in Support of Objection, Ex. 1, Deposition of Todd Eisenhauer ("Eisenhauer Deposition") 18:4-19:13.
[2] Eisenhauer Deposition at 53:10-16.
[3] Eisenhauer Deposition at 53:20-54:1.

3

> A Yes.
> Q And Mr. Eisenhauer mentioned receiving commissions on other sales that have occurred in this case. Do you recall that testimony?
> A Yes.
> Q And did the debtor, and that means you or Mr. Kingsborough, know of those commissions before those sale motions got filed?
> A Yes.[4][5]

If Mr. Eisenhauer received a 10% buyer's premium on each approved sale in this case, the amount of undisclosed property of the estate paid to him (**_with_** the knowledge and consent of the Debtor) would be about $136,000.[6] Anvil must estimate this amount because the Debtor (and Mr. and Mrs. Kingsborough's) state court counsel refused to let Mr. Eisenhauer testify about which sales he received a buyer's premium on and which he did not.[7]

Mr. Eisenhauer even testified that a high buyer's premium discourages buyers by making it more expensive for buyers to purchase the property:

> Q. Does a high buyer's premium discourage buyers?
> A. Possibly. But if it's -- but if it's good equipment, then -- and people need the equipment, they will pay it.
> Q. But a buyer's premium just makes it more expensive for the buyer; right?
> A. Yes.[8]

The Debtor knowingly – and without formal or informal disclosure to the Court or any creditor – sold approximately $1.3 million worth of equipment through numerous sales and allowed to Mr. Eisenhauer to be paid a buyer's premium of 10% on some significant portion of that sale and by his own admission artificially lowered the sale price. Another way to put it is that the only purportedly cash accretive actions taken by the Debtor in this six-month-old case involved knowingly improper payments made to a decades-long friend of the Debtor's principals. This Sale Motion should be denied.

///

---

[4] Praetzellis Declaration, Ex. 2, Cindy Kingsborough Deposition ("Kingsborough Deposition") at 42:5-8.
[5] Stunningly, Mrs. Kingsborough – after hearing the testimony about the buyer's premium –testified that she thought nothing was omitted from her declaration in support of the JCC Sale Motion. Kingsborough Deposition at 32:19-33:3.
[6] Sale Orders at Dkt. No. 43, 135, 138, 167, 200, 201 in the amounts of $431,606, $15,000, $168,000, $575,000, $97,400, and $82,000, respectively leading to total sales proceeds of approximately $1.36 million.
[7] Eisenhauer Deposition at 55:8-56:19 (questions, objections, and instructions not to answer); *see also id*. at 57:12-20 (Mr. Eisenhauer received a commission on some, but not all, sales in the case)
[8] Eisenhauer Deposition at 62:22-63:3.

4

174697755.2
Case: 25-10088   Doc# 227   Filed: 07/22/25   Entered: 07/22/25 17:21:40   Page 4 of 6

## IV. CONCLUSION

This Sale Motion cannot be approved. In involves improper payment of a buyer's premium with property of the estate that artificially reduced estate recoveries. Furthermore, Anvil respectfully suggests that Debtor's conduct, by failing to disclose and obtain approval for these payments, raises serious concerns about whether the Debtor should continue as a debtor-in-possession.

Date: July 22, 2025                                FOX ROTHSCHILD LLP

/s/ *Jack Praetzellis*
Jack Praetzellis
*Attorneys for Anvil Builders*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents entitled: ANVIL BUILDERS' SUPPLEMENTAL OBJECTION TO JCC TRANSPORT SALE MOTION will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 7/22/25, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jamie P. Dreher    jdreher@downeybrand.com
- Michael C. Fallon    fallonmc@fallonlaw.net, manders@fallonlaw.net
- Michael C. Fallon    mcfallon@fallonlaw.net, manders@fallonlaw.net
- Alan W Forsley    alan.forsley@flpllp.com
- Gabriel P Herrera    gherrera@kmtg.com, bxiong@kmtg.com
- Paul Gregory Leahy    Paul.Leahy@usdoj.gov
- Matthew P. Minser    mminser@sjlawcorp.com
- Office of the U.S. Trustee / SR    USTPRegion17.SF.ECF@usdoj.gov
- Jack Praetzellis    jpraetzellis@foxrothschild.com, jack-praetzellis-1683@ecf.pacerpro.com
- Michael A. Sweet    msweet@foxrothschild.com, michael-sweet-6337@ecf.pacerpro.com
- Philip J. Terry    pjterry@cmprlaw.com, dhayes@cmprlaw.com
- Jennifer C. Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

**2.** **SERVED BY UNITED STATES MAIL**: On N/A, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on N/A, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/22/2025 | Kimberly Hoang | /s/ Kimberly Hoang |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

Active\118534396.v2-1/12/21