GABRIEL P. HERRERA, State Bar No. 287093
*gherrera@kmtg.com*
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Professional Corporation
1331 Garden Hwy, 2nd Floor
Sacramento, California 95833
Telephone: (916) 321-4500
Facsimile: (916) 321-4555

Attorneys for Creditor,
COMMERCIAL CREDIT GROUP INC.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>KINGSBOROUGH ATLAS TREE SURGERY, INC.,<br><br>        Debtor. | Case No. 25-10088<br>Chapter 11<br><br>**RESPONSE TO DEBTOR'S MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE**<br><br>Judge:    Hon. William J. Lafferty, III<br>Date:     December 17, 2025<br>Time:    10:30 am.<br>Dept.:    Crtrm 220, Oakland, CA<br>           or via Zoom |

Commercial Credit Group, Inc. ("Creditor") hereby submits this response to the Debtor Kingsborough Atlas Tree Surgery, Inc.'s ("Debtor") Motion for Appointment of a Chapter 11 Trustee. While the Creditor believes "cause" exists under both 11 U.S.C. sections 1104 and 1112, the Creditor believes it is in the best interest of creditors and the estate to have the case converted to Chapter 7.[1] The Debtor is not operating, has no business, and is only liquidating estate assets. A Chapter 7 trustee is in the same – if not a better – position to "oversee the final liquidation of assets and assess the claims made by the Debtor against Anvil" while avoiding the cost and expense of a Chapter 11 trustee which could ultimately seek to convert the case anyways. In support thereof, the Creditor provides as follows:

---

[1] Courts recognize that "the court may act *sua sponte* in dismissing or converting a case under section 1112(b). Collier on Bankruptcy, ¶ 1112.04[2]; see also *In re Labankoff*, 2010 WL 6259969, *5 (9th Cir.BAP 2010).

4903-7985-0107.1 015137.003        1

**FACTUAL BACKGROUND**

1. On or about February 20, 2025, the Debtor commenced the above-captioned bankruptcy case by the filing of a Chapter 11 petition. The Debtor is the debtor-in-possession.

2. Among the assets of the Debtor's bankruptcy estate is the Debtor's interest in various equipment and titled vehicles ("Personal Property"). The Debtor does not dispute that the Creditor has a blanket security interest against the assets of the Debtor, including the Personal Property.

3. On or about March 31, 2025, the Debtor appeared at its 341 meeting of creditors. The Debtor, through its owner, testified that: (a) the Debtor is not operating a business; (b) it does not intend on operating a business in the future; and (c) its only intention for the future is to litigate claims against Anvil Builders, Inc. ("Anvil"), it entered into an asset purchase agreement in June of 2023.

4. On or about June 18, 2025, the Court entered an order authorizing the sale of a 2021 Vermeer HG6800TX Horizontal Grinder with Dolly. However, the sale was never consummated.

5. On or about July 8, 2025, the Court entered orders authorizing the sale of various equipment, including a 2020 Bandit 18XP Chipper, a 2010 Bandit 19XP Chipper, a 2020 Vermeer 42" Log Grappler, a 2020 Vermeer Rotating Grappler, a 2020 Felling Equipment Trailer, a 2010 Vermeer SC 292 Stump Grinder, a 2017 Caterpillar 208-D Excavator, a 2017 Rotobec Rotating Grapple Attachment, and a 2019 Vermeer CTX. However, these sales were also never consummated.

6. On or about September 18, 2025, the Court entered an order granting the Debtor's motion to sell various titled personal property assets by auction.

7. On or about September 30, 2025, the Debtor filed another motion to sell the estate's interest in various other personal property assets by auction ("Motion"). As explained in the Motion, the Creditor and the Debtor agreed to a reserve price for each piece of the Creditor's specific collateral. If the reserve prices were met, the proceeds were anticipated to result in the payoff of the Creditor's secured claim including interest and legal expenses through the date of payment.

8. On or about November 4, 2025, the Court entered an order granting the Motion. To date, it is unclear whether any auction has taken place or the result of any auction.

9. On or about November 14, 2025, the Debtor filed a motion to appoint a Chapter 11 trustee. The Debtor claims that it would be in "the best interest of creditors to have an independent trustee oversee the final liquidate of assets and to assess the claims made by the Debtor against Anvil." Likewise, the Debtor states that it understands that "the appointment of a trustee is the first step to the conversion of the case to Chapter 7."

## ARGUMENT

While "cause" exists under 11 U.S.C. sections 1104 and 1112, conversion to Chapter 7 is in the best interest of creditors and the estate. Preliminarily, "cause" is required in order to appoint a Chapter 11 trustee or to convert a case to Chapter 7. See 11 U.S.C. sections 1104 and 1112. There is a minor difference in the language used in sections 1112(b) and 1104(a) in that section 1112(b) contemplates the best interest of creditors and the estate whereas section 1104(a) has more expansive language referring to additional parties, that is, whether the appointment of a trustee "is in the interests of creditors, any equity security holders, and other interests of the estate." See Colliers on Bankruptcy, ¶ 1104.02, FN 3, citing *In re Corona Care Convalescent Corp.*, 527 B.R. 379, 384 (Bankr.C.D.Cal. 2015). However, section 1112 provides a court the option to convert or dismiss the case as opposed to the appointment of a Chapter 11 trustee.

First, under either 11 U.S.C. section 1104 or 1112, it is indisputable that "cause" exists. Indeed, the Debtor is the one who has made the argument that "cause" exists, stating that "Richard and Cindy Kingsborough, who are themselves debtors in chapter 11, have determined it is in the best interest of creditors to have an independent trustee oversee the final liquidation of assets and to assess the claims made by the Debtor against Anvil." The Debtor apparently no longer wants to be the debtor in possession. Moreover, this case has been pending for nearly ten (10) months and there has not been a plan confirmed. While the Debtor has had sales approved, at least two sales were not consummated and it is unclear whether any auctions have occurred or the results of any auctions. Further, the Debtor is not operating, has no intention of operating, and no reorganization will occur.

With respect to the best interest of creditors, the Creditor believes that conversion to Chapter 7 is warranted. The Debtor simply asserts that "the appointment of a trustee is the first step to conversion of the case to chapter 7," but it is unclear why there should be any delay if conversion is

being contemplated. The Debtor is not operating, has not operated in over a year, and does not intend to operate. Similarly, there is no ongoing business activities that need to be monitored and there is no going concern to sell. Collier on Bankruptcy, ¶ 1112.04[7] (stating appointment of a Chapter 11 trustee is warranted "upon a finding that the business of the debtor may operate profitably in a bankruptcy and by operation maximize payments to creditors"). The Debtor has stated that a Chapter 11 trustee should monitor the approved auctions, but a Chapter 7 trustee can do exactly the same. The appointment of a Chapter 11 trustee will inevitably only increase administrative expense and cause unnecessary delay from the inevitable conversion (requiring further motion practice) to the detriment of creditors. Consequently, the case should simply be converted.

**WHEREFORE**, the Creditor requests that the Court convert the case to one under Chapter 7 rather than the appointment of a Chapter 11 trustee.

DATED: December 3, 2025

KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Professional Corporation

By: _____
Gabriel P. Herrera
Attorneys for Creditor,
COMMERCIAL CREDIT GROUP INC.

Case: 25-10088   Doc# 317   Filed: 12/03/25   Entered: 12/03/25 10:26:44   Page 4 of 4