Michael C. Fallon, SBN 088313
Michael C. Fallon, Jr., SBN 303082
100 E Street, Suite 219
Santa Rosa, California 95404
T: (707) 546-6770
F: (707) 546-5775
E: mcfallon@fallonlaw.net
fallonmc@fallonlaw.net

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In Re:

Kingsborough Atlas Tree Surgery, Inc.

Debtor.

______________________________________/

Case No. 25-10088 WJL

Chapter 7

APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR COUNSEL FOR DEBTOR

TO: The Honorable WILLIAM J. LAFFERTY United States Bankruptcy Judge:

The Application of Michael C. Fallon, ("Applicant") respectfully represents:

1. On February 20, 2025, the Debtor Kingsborough Atlas Tree Surgery, Inc. filed its voluntary petition for relief under Chapter 11 in the above-entitled Court. The Debtor remained in ownership and management of its property as a debtor-in-possession until December 21, 2025 when Janina Hoskins was appointed Chapter 11 Trustee.

2. On February 24, 2025, this Court entered its Order authorizing Applicant's employment as counsel for the Debtor, Dkt. No. 14.

3. No award of compensation has been sought previously by Applicant in this matter. Applicant was paid a pre-petition retainer totaling $75,000 from which he was $11,575 before the chapter 11 was filed as was duly disclosed in Debtor's "Motion for Authority to Employ

Bankruptcy Counsel for Debtor-in-Possession", Dkt. No. 8.

4. Applicant's Application for Compensation covers the period from February 20, 2025 to March 24, 2026 the date the case was converted to a case under chapter 7. Applicant's services rendered and costs incurred during the period covered by this Application are itemized on Exhibit "A" attached hereto, which Exhibit is incorporated by reference herein as if set forth in full. Applicant anticipates that this will be his final application for pre-conversion services.

OVERVIEW

5. In June of 2023, Debtor entered an Asset Purchase Agreement ("APA") with Anvil builders and related entities ("Anvil") wherein Debtor intended to sell its tree surgery/landscape business Debtor had been operating since 1994. In January of 2025, in response to what Debtor has claimed was Anvil's failure to perform under the APA, Debtor filed a civil action against Anvil in the Sonoma County Superior Court. Debtor filed Chapter 11 on February 20, 2025, for the express purpose of going through an orderly liquidation of its assets under the protection of this court.

6. It was the original intent to sell both the certificated or titled assets, trailers and trucks, and the heavy equipment used in the operation of the business through private sales approved by this court, and from the sale proceeds pay the claims of those creditors who held a security interest in the assets being sold, with the balance of the sale proceeds to be available to pay unsecured creditors. A number of sales were approved, with the secured creditors being paid as anticipated, but the process soon became cumbersome and not cost effective. Debtor sought and obtained approval to retain an auctioneer to sell the remaining assets at auction, a motion for authority to sell the remaining assets at auction was approved by this court following notice to creditors. Auction sales were conducted and secured creditors paid. Following the appointment of a chapter 11 trustee pursuant to Debtor's request, the remaining assets were sold.

7. In response to the motions for relief from stay filed by several secured creditors, the motions were resolved either by an agreement that allowed the Debtor time to complete the auction process, or, in the situation where there was no equity in the asset that could benefit the

estate, by an agreement where the Debtor consented to relief.

8. Debtor proposed a plan that was intended to continue the liquidation of assets and the payment of the secured claims. Following Anvil's objection to the Disclosure Statement that signaled there was to be a confirmation battle that would cost the estate unnecessary expense, the plan was withdrawn. Within a relatively short time the Debtor filed a motion to appoint a chapter 11 trustee.

9. Debtor and Anvil agreed to mediate the State Court litigation with the assistance of the Honorable Dennis Montali. Applicant participated in the mediation, together with special counsel, both remotely and in person at Judge Montali's courtroom and chambers in San Francisco. The mediation was not successful.

10. Following the appointment of the chapter 11 trustee, Applicant worked with the trustee and her counsel to transition to the trustee's control of the funds of the case.

DESCRIPTION OF SPECIFIC SERVICES

11. Movant's primary services rendered to the Debtor and the Estate during the period of time covered by this Motion consist of the following:

(a) Administrative Matters

The bankruptcy schedules that were prepared prior to the filing of the case were reviewed by the client, corrected and updated as needed and filed. Applicant prepared the Chapter 11 Initial Reporting and assembled the documents requested by the Office of the United States Trustee in preparation for the Initial Debtor Interview. The documents were reviewed with Richard Kingsborough, the designated responsible person, who then participated with your Applicant in the Initial Debtor Interview. Applicant also participated with Richard Kingsborough in the Sec. 341 Meeting of Creditors. Applicant responded to issues raised by the Office of the United States Trustee concerning insurance on property of the estate, debtor in possession accounts, and the monthly operating reports. Status Conference Statements were prepared; Applicant participated in the Status Conferences.

(b) Abandonment

After receiving objections to the sale of Debtor's Customer List and certain personal

property, Applicant prepared a Notice of Intent to Abandon both the Customer List and separate notice to abandon equipment. Anvil objected to the abandonment, a response was prepared and an agreement was reached to resolve the abandonments.

Approximately 1.7 hours was spent on this matter.

(c) Adversary Proceeding

The "Adversary Proceeding" was the pre-petition litigation that was brought by the Debtor against Anvil Builders in the Sonoma County Superior that was removed to this court and subsequently remanded. This matter also involved peripheral matters relating to the litigation such as complaints that were filed by subcontractors that commenced litigation against Anvil. And, thirdly Debtor's complaint against Anvil to compel turnover of estate assets that were in Anvil's possession and control. Applicant had almost no involvement in the peripheral matters and little involvement in the turnover action. Applicant's principal effort was to work towards a settlement of the litigation. Applicant met with the principals of the Debtor and litigation counsel to formulate a settlement offer that focused on what was best for the unsecured creditors that was contrasted with the outcome and risks if the matter went to trial. Applicant participated in multiple meetings with litigation counsel and Judge Montali. Applicant participated with the principals of the Debtor and litigation counsel in an all day mediation in San Francisco with Judge Montali. Following the mediation, your applicant again met with the principals and continued to confer with Judge Montali until Judge Montali determined there would not be a settlement. Applicant then met with an attorney who the principals were considering as new litigation counsel to discuss the merits and the problems with the Debtor's claims.

Approximately 60 hours was spent on these matters.

(d) Private Sales

Debtor presented to your Applicant a dozen or so offers to buy the Debtor's assets. When the offers were received motions for authority to sell were prepared; few of the motions were approved without some objection. Some of the objections were resolved and the sales were consummated with the secured parties being paid and the excess sale proceeds paid to the

Debtor. The objections that were not timely resolved resulted in a loss of the sales. In one instance, Debtor determined that rather than fight the objection the better course was to abandon the assets. When it became clear the sale of estate's asset by private sale was not an efficient means to liquidate assets, the Debtor looked to sell the assets at auction.

Approximately 69 hours were spent on this matter.

(e) Auction Sales

After considering several auction houses and then selecting Dudley Auctions to conduct the auction sales, Dudley was appointed as auctioneer. Applicant conferred on a number of occasions with the team at Dudley to explain the process through the bankruptcy system, to facilitate the turnover of information related to the equipment that was to be sold, confer with secured creditors to resolve their concerns with the sale of their collateral, and to secure confirmation sales tax would be collected and paid, and reports prepared for the court. A motion for authority to sell the titled/certificated assets was prepared and both informal and formal objections to the sale were resolved. A second motion was prepared for authority to sell the non-titled equipment and, as with the first motion, both informal and formal objections were resolved.

Approximately 35 hours were spent on this matter.

(f) Creditor Inquires

Secured creditors contacted your applicant to inquire as to status of their getting paid on their secured claims. Sonoma County inquired as to unsecured property tax it claimed was by the Debtor for property that was under the control of Anvil. The Labor Union tracked the progress of the equipment sales so as to determine when it might get paid. There were regular inquires by a wage and hour claimant inquiry.

Approximately 12 hours were spent on this matter.

(g) Insurance Claim

There were two insurance claims that had to be resolved. There was no question as to liability; it was only a question of payment. The largest of the two claims involved the total loss of equipment that was collateral for the CCG loan. Thar matter was finally resolved with the

insurance proceeds paid to CCG. The second claim involved the loss of a Ford truck. After some effort, Ford was paid its secured claim and the excess proceeds were paid to the Debtor.

Approximately 5 hours were spent on this matter.

(h) Chapter 11 Plan

Prepared several drafts of a proposed liquidating plan and several drafts of a proposed disclosure statement. Reviewed and responded to creditor questions concerning plan treatment. Reviewed and responded to questions from Paul Leahy with the UST concerning specific provisions in the plan. Reviewed Anvil objection to the Disclosure Statement. Appeared at the hearing on approval of the Disclosure Statement and withdrew the Disclosure Statement.

(i) Retention of Professionals

Prepared applications to employ for Applicant as general counsel; Jeff Terry as special litigation counsel; Fred Klemenok as CPA; Dudley Auction as auctioneer.

Approximately 16 hours was spent on applications to employ professionals.

(j) Relief from Stay

A number of secured creditors either filed motions for relief from stay to recover and liquidate collateral or, in the situation of insurance recovery, informally requested a stipulation to pursue insurance. In several cases Debtor stipulated to immediate relief either because the collateral was recovered pre-petition or there was no equity in the collateral to benefit the estate. In several cases where Debtor understood their to be value in the collateral above what was owed to the secured lender, an agreement was negotiated to allow Debtor time to sell the collateral.

Approximately 10 hours was spent on relief from stay matters

(k) Status Conferences

Status Conference Statements were prepared for each status conference and Applicant participated in each Status Conference.

Approximately 7 hours were spent on Status Conference.

(l) Turnover Order

Debtor contended that Anvil had in its possession or under its control several million

dollars of estate assets that had to be returned to the Debtor. Applicants involvement in this matter was limited to assisting special counsel and participating, on a limited basis, to resolve the matter.

Approximately 6 hours were spent on the turnover issues.

(m) Claims

Review claims; discuss various issues with client.

Approximately 8 hours were spent on this matter

(m) Chapter 11 Trustee

After the chapter 11 trustee was appointed at the request of the Debtor, Applicant met with Janina Hoskins and her counsel, Charley Maher. Thereafter, Applicant gathered for the trustee information concerning the three debtor in possession accounts, accounts receivable, equipment in Anvil's possession and the pending auction sales. Applicant also conferred with George Lee who intended to propose to the trustee that he represent the estate in the pending lititgation against Anvil.

Approximately 18 hours were spent working with the trustee and her counsel.

(n) Fee Application

Review time records; put in sub-categories. Prepare fee application.

Approximately 14 hours were spent on this matter.

SUMMARY

| | |
|---|---|
| Administration 27.20 hrs @ $500 = | $ 13,600 |
| Abandonment 1.70 hrs @ $500 = | $ 850 |
| Adversary Proceeding 72.40 hrs @ $500 = | $ 36,200 |
| Private Sales 70.25 hrs @ $500 = | $ 35,125 |
| Auction Sale 35.65 hrs @ $500 = | $ 17,825 |
| Creditor Inquiries 14.40 hrs @ $500 = | $ 7,205 |
| Insurance Claims 5.10 hrs @ $500 = | $ 2,550 |
| Plan and Disclosure Statement 14.70 hrs @ $500 = | $ 7,350 |
| Professionals 16.45 hrs @ $500 = | $ 8,225 |
| Relief from Stay 9.40 hrs @ $500 = | $ 4,700 |
| Status Conference 7.20 hrs @ $500 = | $ 3,600 |
| Turnover Order 6.15 hrs @ $500 = | $ 3,075 |
| Claims 7.50 hrs @ $500 = | $ 3,750 |
| Chapter 11 Trustee (Post Chapter 11) 7.80 @ $500 = | $ 8,900 |
| Fee Application 14.60 @ $500 = | $ 7,300 |
| Sub Total | $161,255 |

| | |
|---|---|
| Cost Advanced | $ 1,310 |
| Total | $162,565 |

## PRAYER

WHEREFORE, Applicant prays for allowance and payment of fees in the amount of $161,255 and reimbursement of expenses in the amount of $1,310, for a total of $162,565, less $63,425 that was paid after the chapter 11 was filed ($99,140).

Dated: June 12, 2026

/s/ *Michael C. Fallon*

Michael C. Fallon
Attorney for Debtor

## Certification Regarding Compliance with Local Rules

I, Michael Fallon, certify that I have read the application and to the best of my knowledge, information and belief, after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with the court's guidelines, and the compensation and expense reimbursement requested are billed at rates no less favorable than those customarily employed by the Applicant, and generally accepted by your Applicant's clients.

I further certify that I have not received any compensation for my representation of the trustee, that I have not been promised any compensation except on those terms set forth in the application to employ me as counsel, and that I do not have an agreement or understanding with any entity for the sharing of compensation that may be approved by this court.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed by me on June 12, 2026, at Santa Rosa, California.

/s/ *Michael C. Fallon*
Michael C. Fallon